THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. D.T., a Minor, Petitioner-Appellant.

First District (3rd Division)   No. 1—96—2214

Opinion filed March 19, 1997.

Rita A. Fry, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

D.T., a minor, was taken into custody on April 5, 1996, for possession of a controlled substance. He was released from temporary custody that day and appeared at all subsequent court dates. On June 21, 1996, after hearing testimony from D.T.'s probation officer, Judge Haberkorn ordered that D.T. be temporarily detained and set his adjudicatory hearing for July 3, 1996. D.T. thereupon filed an emergency petition for writ of *habeas corpus*. That petition was heard and denied on June 25, 1996, by Judge Hibler, presiding judge of the juvenile division of the circuit court.

D.T. appeals from the denial of his emergency petition for writ of *habeas corpus*, arguing that his petition should have been granted because his detention was not authorized by any provision of the Juvenile Court Act of 1987 (the Juvenile Court Act) (705 ILCS 405/1—1 *et seq.* (West 1994)) and because he was denied due process.

■ Before reaching the merits of D.T.'s argument, we must first determine whether this appeal has been rendered moot by the fact D.T. was the subject of an adjudicatory hearing and is no longer in custody.[1] As a general rule, a court of review will dismiss an appeal when it has notice of facts which show that only moot questions or mere abstract propositions are involved or where the substantial questions involved in the trial court no longer exist. *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 104 N.E.2d 769 (1952). See *In re E.G.*, 133 Ill. 2d 98, 549 N.E.2d 322 (1989) (a case is moot where no present controversy exists); *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 638 N.E.2d 736 (1994) (an issue is moot where events occur that make it impossible for the court to grant effectual relief). Under a well-recognized exception to that rule, a case that has become moot will not be dismissed upon appeal where a substantial public interest

---

[1] D.T. does not challenge nor could he challenge the court's authority to adjudicate the delinquency charge. Any violation of the temporary detention provisions of the Juvenile Court Act would not deprive the court of its jurisdiction over the minor. See *People v. Clayborn*, 90 Ill. App. 3d 1047, 414 N.E.2d 157 (1980).

exists. In determining whether such an interest exists, the courts consider, *inter alia*, three criteria: whether the question is public in nature; whether it is desirable to make an authoritative determination of a question for the guidance of public officials; and whether the question is likely to recur. *In re E.G.*, 133 Ill. 2d 98, 549 N.E.2d 322; *Labrenz*, 411 Ill. at 623, 104 N.E.2d at 772; *In re A.F.*, 234 Ill. App. 3d 1010, 602 N.E.2d 480 (1991). See *People v. Bailey*, 116 Ill. App. 3d 259, 452 N.E.2d 28 (1983) (public issue exception met where inherent ambiguity in statutory sentencing scheme likely to recur).

■ Here, as D.T. is no longer in custody, his *habeas corpus* petition has become moot. *In re A.F.*, 234 Ill. App. 3d 1010, 602 N.E.2d 480. We find, though, that this case presents an issue of substantial public interest, the juvenile court judge's authority to initiate a temporary detention hearing for a minor who was released after being taken into custody and who was awaiting an adjudicatory hearing. See *People v. Clayborn*, 90 Ill. App. 3d 1047, 1052, 414 N.E.2d 157, 161 (1980) ("[t]he detention of a juvenile is a matter of public concern, and an authoritative determination of the issue will guide public officials and juvenile court judges who are likely to face the problem in the future"). That issue is likely to recur with respect to other minors and, due to the time constraints of the Juvenile Court Act, generally will become moot before review can be obtained. See *In re E.G.*, 133 Ill. 2d 98, 549 N.E.2d 322; *In re A.F.*, 234 Ill. App. 3d 1010, 602 N.E.2d 480; *Bailey*, 116 Ill. App. 3d 259, 452 N.E.2d 28. Under these circumstances, the requisite degree of public interest exists, and we will not dismiss this appeal on the basis of mootness.

The facts concerning D.T.'s temporary detention are as follows. On April 5, 1996, D.T. was taken into custody by a law enforcement officer for possession of a controlled substance. A delinquency petition was filed and D.T. was given a court date of April 25, 1996, and released.[2] On June 21, 1996, D.T.'s third court date, D.T., his aunt, who was his guardian, and a probation officer, Yolanda Dixon, appeared before Judge Haberkorn. Dixon, who previously had been ordered by the judge to prepare a "pretrial social," reported that D.T. had been abandoned by his mother, was living with his aunt, and was a ward of the Department of Children and Family Services. She next stated that D.T. had not attended school the previous year and that during the current year he refused to stay in his classroom; often walked the school halls; was uncooperative; and was disrespectful to his teacher. Dixon stated that D.T. took $40 of his aunt's rent

---

[2]The delinquency petition was not included in the record on appeal. The parties do not dispute that a petition had been filed.

money. (D.T. admitted that he took the $40 to buy a bicycle.) She stated that D.T. returns home "any time he pleases"; that he once attended a gang leader's birthday party that began at 2 or 3 a.m.; that D.T.'s aunt had to search for him on the morning of the hearing and eventually found him in an "after-hours club"; and that D.T. admits to being a gang member.

After hearing from the probation officer, Judge Haberkorn was advised by the assistant State's Attorney that the police officer who had taken D.T. into custody had been present in court and that she had released him when D.T.'s counsel indicated that he would be requesting a continuance. Although the judge granted D.T.'s request for a continuance, she stated that D.T.'s conduct was "outrageous" and that he would be held. After defense counsel objected, the judge ordered that the case be held over so that the police officer and case worker could be contacted and ordered to appear.

When the case was recalled that afternoon, the judge indicated that the police officer who apprehended D.T. would be testifying by speaker phone. Based upon that officer's testimony, Judge Haberkorn made a finding of probable cause. Defense counsel objected to the proceeding and to the telephonic questioning of the officer. Thereafter, the State argued that D.T. should be detained based upon the report of D.T.'s probation officer, which showed that D.T. was out of control. Defense counsel again objected to the proceeding. Finding that D.T.'s detention was a matter of urgent and immediate necessity, the judge ordered that D.T. be detained and set his adjudicatory hearing for July 3, 1996.

D.T.'s counsel thereupon filed a petition for writ of *habeas corpus* seeking D.T.'s immediate release. The petition argued that the court was without authority to take D.T. into custody on June 21, 1996. On June 25, 1996, Judge Hibler denied the petition, finding that Judge Haberkorn had authority to protect D.T. and the public after being presented with evidence showing that D.T. was beyond the control of his aunt. He also held that the finding of probable cause was not improper despite the fact that the police officer's testimony was given by telephone since defense counsel was afforded an opportunity to and did cross-examine him.

■ The purpose of the Juvenile Court Act of 1987 (the Juvenile Court Act) (705 ILCS 405/1—1 *et seq.* (West 1994)) is to provide care and guidance to minors, preferably in their own homes, as will serve their moral, emotional, mental and physical welfare and the best interests of the community. 705 ILCS 405/1—2 (West 1994); *People v. Clayborn*, 90 Ill. App. 3d 1047, 414 N.E.2d 157 (1980). The Juvenile Court Act is a comprehensive statutory scheme that creates and

defines the powers of the juvenile court. As stated in *In re M.M.*, 156 Ill. 2d 53, 66, 619 N.E.2d 702, 710 (1993):

> "When a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction [citation] and courts exercising jurisdiction over such matters must proceed within the strictures of the statute [citation]."

See *People v. Woodruff*, 88 Ill. 2d 10, 14, 430 N.E.2d 1120, 1122 (1981) ("[t]he Juvenile Court Act severely limits the authority [of the court] to hold a minor in custody"); *In re J.S.L.*, 197 Ill. App. 3d 148, 553 N.E.2d 1135 (1990) (stating that when a court's power to act is controlled by statute, the court is governed by rules of limited jurisdiction).

The instant appeal concerns the juvenile court's power to order the temporary detention of a minor alleged to be delinquent. That power is created and defined by sections 5—5 through 5—10 of the Juvenile Court Act. 705 ILCS 405/5—1 through 5—10 (West & Supp. 1995). Those provisions establish an orderly scheme for taking the minor into custody and for retaining the minor in custody while he awaits an adjudicatory hearing. They set forth how the minor is taken into custody, who may take the minor into custody, who files the delinquency petition and when that petition must be filed, what criteria must be met in order to retain the minor in temporary detention while awaiting an adjudicatory hearing, who determines whether the minor will be retained in detention, and when the minor is entitled to a detention hearing.

●4 The Juvenile Court Act creates two divergent methods for taking the minor into custody and for retaining him in temporary custody thereafter. One method provides for the taking of the minor into custody under warrant. 705 ILCS 405/5—5(2) (West 1994). The process by which the minor is taken into custody under warrant is initiated by the filing of a verified petition by any adult person, agency or association wherein facts of delinquency are alleged. 705 ILCS 405/5—5(2), 5—13 (West 1994). If after the filing of that petition the court finds that the conduct of the minor may endanger the health, person, welfare, or property of himself or others or that the circumstances of his home environment may endanger his health, person, welfare or property, the court will issue a warrant. 705 ILCS 405/5—5(2) (West 1994). A law enforcement officer will serve the warrant, take the minor into custody and deliver the minor to the nearest juvenile police officer, who must transport the minor, without delay, to the court or place designated for the reception of minors. 705 ILCS 405/5—5(2), 5—6(1) (West 1994).

A second method allows for the taking of the minor into

custody without a warrant. 705 ILCS 405/5—5(1) (West 1994). That process is initiated when a law enforcement officer takes the minor into custody based upon a reasonable belief that the minor is delinquent. 705 ILCS 405/5—5(1) (West 1994). Unless the officer releases the minor, he must, without unnecessary delay, surrender the minor to the nearest juvenile police officer. 705 ILCS 405/5—6(2) (West 1994). Thereafter, the juvenile police officer is authorized to take one of several statutorily enumerated actions, which include releasing the minor or keeping the minor in custody. 705 ILCS 405/5—6(3)(h), (3)(i) (West 1994). If the juvenile police officer reasonably believes that there is an urgent and immediate necessity to keep the minor in custody, based upon the statutory factors listed in section 5—6(4), he is required to deliver the minor to court or to the place designated by rule or order of court for the reception of minors. 705 ILCS 405/5—6(3)(i) (West 1994).

When the minor is delivered to court or to the place designated by the court, a probation officer or other public officer designated by the court must pursue an investigation. 705 ILCS 405/5—8 (West 1994). That officer must immediately release the minor to his parent or guardian unless he or she determines that the minor is likely to flee or that further detention is a matter of urgent necessity for the protection of the minor or of the person or property of another. 705 ILCS 405/5—8 (West 1994). If the probation or other court-designated public officer determines that the minor should be retained in custody, he or she "shall cause a [verified] petition [of delinquency] to be filed." 705 ILCS 405/5—9(b) (West 1994). That petition must allege various matters, including facts establishing the delinquency charge and the date set for the detention or shelter care hearing. 705 ILCS 405/5—13(2) (West 1994). After that petition has been filed, the clerk of the court will set the matter for a detention hearing. 704 ILCS 405/5—9(2) (West 1994). Section 5—9 of the Juvenile Court Act mandates that if the minor is not brought to court for a detention hearing before the expiration of 36 hours from the time the minor was taken into temporary custody, he must be released. 705 ILCS 405/5—9(3) (West 1994); *People v. Clayborn*, 90 Ill. App. 3d 1047, 414 N.E.2d 157 (1980).

At the detention hearing, the court must determine whether there is probable cause to believe the minor is delinquent and whether it is a matter of immediate and urgent necessity for the protection of the minor or of the person or property of another that the minor be detained or placed in shelter care or that the minor is likely to flee the jurisdiction of the court. 705 ILCS 405/5—10(1), (2) (West Supp. 1995). If, however, the court finds that the minor was not

brought before it within the time period specified in section 5—9, it must release the minor. 705 ILCS 405/5—10(6) (West Supp. 1995).

The facts in the instant case show that D.T. was taken into custody by a police officer without a warrant on April 5, 1996. See 705 ILCS 405/5—5(1) (West 1994). No finding was made on that day either by a juvenile police officer or a probation officer that there was an urgent and immediate necessity to keep D.T. in custody. See 705 ILCS 405/5—6(3)(i), 5—8 (West 1994). Instead, a delinquency petition was filed and D.T. was given a court date and released. On June 21, 1996, D.T.'s third court date on the pending delinquency petition, D.T.'s probation officer presented a "pretrial social" report. Based upon that report the judge, on that date, *sua sponte* initiated a detention hearing. She then ordered D.T.'s detention and set his adjudication hearing for July 3, 1996.

D.T. first argues that the juvenile court judge was without authority to order and hold a detention hearing on June 21, 1996, since the hearing came more than 36 hours after he was taken into custody on April 5. Secondly, he argues that in accordance with sections 5—5 through 5—10 of the Juvenile Court Act, detention hearings are not authorized after the minor has been released from custody regardless of the time which elapsed from the time he was taken into custody. Lastly, he argues that he was denied due process because no "petition for detention hearing" was ever filed; because no notice of the detention hearing was provided; and because no testimony was taken at the detention hearing held on the afternoon of June 21, 1996, on the issue of urgent and immediate necessity.

D.T. relies on *People v. Clayborn*, 90 Ill. App. 3d 1047, 414 N.E.2d 157 (1980), in support of his first contention that his detention hearing was unauthorized because more than 36 hours elapsed since he was taken into custody. In *Clayborn*, the minor was taken into custody and retained in custody for a period of time beyond the statutory limit of 36 hours. The court held that the failure to hold a detention hearing within the 36-hour time limit required the minor's release. The court further held that a detention hearing could not be held after the minor was released. In that regard the court stated:

> "The Act nowhere authorizes a detention hearing after the 36-hour limitation has expired. Section 3—5(4) [(now 705 ILCS 405/5—9(3) (West 1994))] *** mandates a maximum period of time that a minor may be held in custody pending judicial action. [Citation.] To adopt the former interpretation [that a delayed hearing can be held after the minor's release] would be to increase the amount of overall time a minor spends in custody while awaiting adjudication and disposition of the petition of wardship. The lat-

ter interpretation [that the juvenile cannot be held in custody at all prior to the adjudicatory hearing after the 36-hour violation] encourages the State to make up for the delay in holding a detention hearing. If the State wishes to keep the minor off the street, it will schedule the adjudicatory hearing at the earliest possible moment, thus vitiating the earlier delay in holding a detention hearing. The statutory policy favoring prompt juvenile proceedings is served by construing section 3—5(4) to ban *any further detention* after a violation of the 36-hour period of section 3—5(1)." (Emphasis added.) *Clayborn*, 90 Ill. App. 3d at 1051-52, 414 N.E.2d at 161.

*Clayborn*, however, is distinguishable from the facts of the instant case because *Clayborn* dealt with the situation where the minor was taken into custody and retained for a period longer than 36 hours before being brought before a judicial officer for a detention hearing. Here, D.T. was taken into custody and released shortly thereafter. The detention hearing held on June 21, 1996, was not held to determine whether D.T. should have been *"further* held in custody" (emphasis added) (705 ILCS 405/5—9(1) (West 1994)), but, rather, was held for the purpose of determining whether D.T. should have been held in custody as of June 21, 1996, more than two months after he was taken into custody by the police and released.

Notwithstanding *Clayborn*'s inapplicability, we nevertheless find that D.T.'s second argument has merit in that once D.T. was released from custody, the trial court was without authority to hold a detention hearing regardless of the time that may have elapsed since the time he originally was taken into custody. Support for this conclusion comes from the plain language of the statute. See *People v. Hicks*, 164 Ill. 2d 218, 647 N.E.2d 257 (1995) (a preeminent role of statutory construction is to give effect to the language and intent of the legislature); *People v. Lewis*, 158 Ill. 2d 386, 634 N.E.2d 717 (1994) (a primary rule of statutory construction is to ascertain and give effect to the intention of the legislature as evidenced by reading the statute as a whole and considering all relevant parts). As discussed above, sections 5—5 through 5—10 of the Juvenile Court Act provide systematic and alternative procedures for the taking and retaining of a minor into custody. The initial taking into custody can occur with or without a warrant. When that taking occurs under warrant, the court makes the "urgent and immediate necessity" determination before the minor is taken into custody. 705 ILCS 405/5—5(2) (West 1994) (a warrant may be issued when the court finds that "the conduct and behavior of the minor may endanger the health, person, welfare, or property of himself or others or that the circumstances of

his home environment may endanger his health, person, welfare or property"). It would therefore seem that no detention hearing is required thereafter because the holding of such a hearing would result in an unnecessary duplication of court effort.

When, as here, the minor is taken into custody without a warrant, the initial determinations to take the minor into custody and to further detain him or her are made by persons other than the juvenile court judge. Under the Juvenile Court Act, those decisions are made by the law enforcement officer (705 ILCS 405/5—5(1), 5—6(2) (West 1994)), the juvenile police officer (705 ILCS 405/5—6(3)(i) (West 1994)) and/or the probation officer (705 ILCS 405/5—8 (West 1994)). When those individuals have not released the minor, section 5—9 of the Act provides that a detention hearing must be held within 36 hours to determine whether the minor "shall be further held in custody." 705 ILCS 405/5—9(1) (West 1994).

If the minor has been released by the law enforcement officer (705 ILCS 405/5—6(2) (West 1994)), by the juvenile police officer (705 ILCS 405/5—6(3)(h) (West 1994)) or by the probation officer (705 ILCS 405/5—8 (West 1994)), the procedures established by section 5—9 for the scheduling of a detention hearing are no longer applicable because there is no pending custody and because the need to hold a detention hearing is mooted by the minor's release. Section 5—9 provides:

"Setting of detention or shelter care hearing; notice; release. (1) *Unless sooner released,* a minor alleged to be a delinquent minor taken into temporary custody must be brought before a judicial officer within 36 hours, exclusive of Saturdays, Sundays and court-designated holidays, for a detention or shelter care hearing to determine whether he shall be *further held in custody.*

(2) If the probation officer (or such other public officer designated by the court in a county having more than 3 million inhabitants) determines that the minor should be retained in custody, he shall cause a petition to be filed as provided in Section 5—13 of this Act, and the clerk of the court shall set the matter for hearing on the detention or shelter care hearing calendar. When a parent, guardian, custodian or responsible relative is present and so requests, the detention or shelter care hearing shall be held immediately if the court is in session, otherwise at the earliest feasible time. The probation officer (or such other public officer designated by the court in a county having more than 3 million inhabitants) shall notify the minor's parent, guardian, custodian or responsible relative of the time and place of the hearing. The notice may be given orally.

(3) The minor must be released from custody at the expiration

of the 36 hour period specified by this Section if not brought before a judicial officer within that period." (Emphasis added.) 705 ILCS 405/5—9 (West 1994).

As is apparent from its face, subsection 5—9(1), which provides for the setting of a detention hearing, is specifically directed toward minors already in custody. Under its provisions, a juvenile once in custody and not "sooner released" can be "further held in custody" pursuant to a detention hearing. Section 5—9 does not provide for a detention hearing with respect to a juvenile who in fact has been "sooner released" and for whom a detention hearing would not therefore be determinative as to whether he should be held in *further custody*. With respect to a minor previously released, a subsequent detention hearing would determine whether he should be placed in custody in the first instance rather than "further held in custody."

■ Thus, once a minor has been released either by the law enforcement officer (705 ILCS 405/5—6(2) (West 1994)), by the juvenile police officer (705 ILCS 405/5—6(3) (West 1994)) or by the probation officer (705 ILCS 405/5—8 (West 1994)), there is no enabling provision in the Act that would then authorize a detention hearing by the court. There is no provision within the statutory scheme established by sections 5—5 through 5—10 of the Act whereby the court can review the decision made by the law enforcement officer, the juvenile police officer or the probation officer to release the minor who has been taken into custody without a warrant. Furthermore, aside from the provision of section 5—9 that is directed at the initiation of a detention hearing for minors already in custody, there is no other provision under the Act with respect to delinquent minors that would authorize the court to initiate a detention hearing after the minor has been released.

Absent the existence of such statutory provisions, the court cannot empower itself to do that which it is not authorized to do. See *In re M.M.*, 156 Ill. 2d 53, 66, 619 N.E.2d 702, 710 (1993) ("[w]hen a court's power to act is controlled by statute, the *** courts exercising jurisdiction over such matters must proceed within the strictures of the statute"); *In re J.S.L.*, 197 Ill. App. 3d 148, 553 N.E.2d 1135 (1990) (stating when a court's power to act is controlled by statute, the court is governed by rules of limited jurisdiction). Here the judicial decision to detain D.T. did not occur within either of the statutory schemes that allowed for the detention of a minor. D.T. was not taken into custody under warrant, and thus the procedures set forth in sections 5—5(2) and 5—6(1) were inapplicable. While D.T. was taken into custody without a warrant, he was released from custody

shortly thereafter. The decision to release D.T. from further detention terminated the detention process established in sections 5—5(1), 5—6(3)(i), 5—8, 5—9 and 5—10 of the Juvenile Court Act. As a result, the court was without authority to consider the issue of D.T.'s detention on June 21, 1996, based upon the delinquency petition filed in April.[3] While it would appear that the trial court could have initiated a new detention process by ordering D.T.'s detention under warrant in accordance with section 5—5(2) of the Juvenile Court Act, that was not done.[4]

In view of our holding that the court was without authority to order and hold a detention hearing on June 21, 1996, we need not reach D.T.'s due process of law argument regarding lack of notice and insufficient evidence.[5]

Reversed.

COUSINS, P.J., and CAHILL, J., concur.

---

[3]If D.T. was subsequently taken into custody based upon new acts of delinquency, a supplemental petition could have been filed (see 705 ILCS 405/5—13 (West 1994)). At that point, the juvenile police officer or probation officer could have made a new determination that D.T.'s detention was a matter of urgent and immediate necessity, and the court could have held a detention hearing based upon that determination and supplemental petition.

[4]For the reason noted in the text of this opinion, where the minor is taken into custody under warrant, no detention hearing would appear to be required because the findings required at that hearing would have previously been made by the court when it issued under warrant (see 287 Ill. App. 3d at 416-17 *supra*). Consequently, this procedure would not invoke the 36-hour limitation issue raised under *People v. Clayborn*, 90 Ill. App. 3d 1047, 414 N.E.2d 157 (1980).

[5]As a further basis for our refusal to address D.T.'s due process argument, we note that he has supported that argument with only one case citation. Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)), made applicable to criminal appeals by Supreme Court Rule 612(i) (134 Ill. 2d R. 612(i)), provides that appellate argument shall contain citation of authorities. It has often been stated that the "appellate court is not a depository in which the appellant may drop the burden of argument and research." *In re Marriage of Winton*, 216 Ill. App. 3d 1084, 1090, 576 N.E.2d 856, 860 (1991). Arguments that do not satisfy the requirements of Supreme Court Rule 341(e)(7) do not merit consideration on appeal and are waived. *People v. Patterson*, 154 Ill. 2d 414, 610 N.E.2d 16 (1992).