759 N.E.2d 15 (2001)
325 Ill. App.3d 771
259 Ill.Dec. 535
In re K.C., K.C., S.C., S.C., T.D., and T.D., Minors (The Department of Children and Family Services, Appellant; K.C., K.C., S.C., S.C., T.D., and T.D., Minors, Appellees).
No. 1-98-3715.
Appellate Court of Illinois, First District, First Division.
October 9, 2001.
*17 James E. Ryan, Attorney General, Joel D. Bertocchi, Solicitor General, and Janon E. Fabiano, Assistant Attorney General, Chicago, for Appellant.
Justice TULLY delivered the opinion of the court:
The Illinois Department of Children and Family Services (DCFS) appeals from an order of the circuit court directing DCFS to remove the team of caseworkers it assigned to a case concerning the abuse and neglect of the minors K.C., K.C., S.C., S.C., T.D., and T.D. and ordering DCFS to assign a new team of caseworkers to the matter. On appeal, DCFS argues that the circuit court's order should be reversed and vacated because: (1) the court lacked subject matter jurisdiction and authority under the Juvenile Court Act of 1987 (Juvenile Court Act or Act) (705 ILCS 405/1-1 et seq. (West 1996)) to order DCFS to remove and replace caseworkers; (2) the circuit court's action violated the doctrine of the separation of powers under article II, section 1, of the Illinois Constitution (Ill.Const.1970, art. II, § 1). This court has jurisdiction pursuant to Illinois Supreme Court Rule 301(134 Ill.2d R. 301). We affirm for the following reasons.

Background
On December 27, 1996, the State's Attorney filed a petition for adjudication of wardship on behalf of six minor children, K.C., K.C., S.C., S.C., T.D., and T.D., alleging the children had been abused and neglected by their parents. The State's Attorney simultaneously filed a motion for temporary custody, which motion the court granted, ordering that the minors be removed from their home and awarded to the DCFS Guardianship Administrator, and directing DCFS to prepare and file a case plan, pursuant to section 2-10.1 of the Juvenile Court Act (705 ILCS 405/2-10.1 (West 1996)). On June 18, 1997, the court entered adjudication orders, pursuant to *18 section 2-21 of the Act (705 ILCS 405/2-21 (West 1996)), finding the minors were abused and neglected and at substantial risk of physical injury. On August 12, 1997, the court entered disposition orders, pursuant to section 2-27 of the Act (705 ILCS 405/2-27 (West 1996)), adjudging the minors wards of the court, finding the mother and fathers of the minors unable and unwilling to care for, protect, train or discipline the children and finding that no reasonable efforts had been made to prevent or eliminate the need for removal of the minors from the home. The court also ordered the termination of temporary custody and, in the best interests of the children, that the DCFS Guardianship Administrator be granted custody of the minor children with the right to place them. The court set the matter for a permanency planning hearing on October 22, 1997.
On October 22, 1997, the court entered a continuance, and ordered that DCFS and caseworker William Horton conduct an administrative case review and provide the parties with a copy of the case review on or before December 18, 1997. On December 18, 1997, the case was continued, and the court entered an order to compel caseworkers William Horton and Edie Washington Gurley, and case management supervisor Leonard Johnson to provide the parties with a current copy of the case plan by January 14, 1998, and to appear in court to provide testimony and other evidence at the permanency hearing. On January 28, 1998, the case was continued. On March 18, 1998, the court again continued the matter, and entered an order to compel case management supervisor Leonard Johnson and caseworker Detrina Moore, to appear in court on May 28, 1998 for purposes of a permanency hearing. On May 28, 1998, Detrina Moore appeared in court, but Leonard Johnson did not. The Assistant State's Attorney made an oral motion that the current team of caseworkers be removed from the case and a new team of caseworkers be assigned because the current caseworkers had repeatedly failed to abide by the court's orders. The court observed that the case had been before it five times since October of 1997, and in spite of repeated orders to compel, the caseworkers still had not performed an administrative case review. The court entered and continued the Assistant State's Attorney's motion to remove the caseworkers, made a finding of no reasonable efforts against Leonard Johnson, directed that an administrative case review be conducted by June 30, 1998, and ordered that all parties be provided with a copy of the case plan by personal distribution in court on July 1, 1998.
On July 13, 1998, the parties appeared in court for the permanency review hearing. Case supervisor Leonard Johnson and caseworker Detrina Moore were present. At the hearing, Johnson testified that the goal of the current case plan was to provide substitute care pending termination of parental rights. Detrina Moore testified this goal was based on the children's mother's refusal to participate in drug treatment programs and her expressed desire that the children be adopted by relatives. Moore represented that although the mother indicated she was not currently using drugs, no referrals for random urine drops had been given to her. Moore also represented that none of the three fathers of the children had been spoken to concerning adoption. Moore further represented that the youngest child, who had been born drug exposed, had not received a one- to three-year-old developmental evaluation. Based on these omissions, the Assistant State's Attorney, joined by the county public guardian, renewed the motion that the current team of caseworkers be removed and a new team of caseworkers be assigned to the case. The attorney *19 for DCFS objected, urging that DCFS be allowed to handle the problem as an internal matter. Over objection, the court continued the permanency hearing, entered a finding of no reasonable efforts against Johnson, Moore, and DCFS, and ordered that the current team of caseworkers be removed and that a new team be assigned within seven days.
Pursuant to the court's order, DCFS removed the caseworkers and assigned a new team of caseworkers to the matter. On August 10, 1998, DCFS moved to reverse and vacate the court's July 13, 1998 order, arguing that the court's order was void because the court lacked subject matter jurisdiction under the Juvenile Court Act to order DCFS to remove and replace the caseworkers it assigned to a case. The public defender, on behalf of the minors' mother, filed a response to the motion, arguing that the issue was moot because DCFS had already complied with the order and replaced the team. On September 1, 1998, the circuit court denied DCFS's motion to vacate. On the same date, the court entered a permanency order, finding the appropriate permanency goal was substitute care pending a determination of the termination of parental rights, the services contained in the service plan were appropriate and reasonably calculated to facilitate achievement of the permanency goal, and that DCFS had made reasonable efforts in providing services to facilitate achievement of the permanency goal. On September 30, DCFS filed a timely notice of appeal from the circuit court's order denying its motion to reverse and vacate the court's July 13, 1998 order.

Discussion
We note, initially, that neither the Assistant State's Attorney, nor any other party, has filed an appellee's brief in this appeal. Nevertheless, we elect to dispose of the appeal on its merits. First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill.2d 128, 345 N.E.2d 493 (1976).
Appellant, DCFS, argues first that the circuit court's July 18, 1998, order must be reversed and vacated on appeal because the court lacked subject matter jurisdiction and authority under the Juvenile Court Act to remove and reassign new caseworkers to a matter. Alternately, DCFS argues the circuit court's action violated the separation of powers doctrine under the Illinois Constitution because it impermissibly infringed upon the discretion of DCFS and, by extension, infringed upon the power of the executive branch.
Before addressing the merits of appellant's arguments, we first must determine whether the issue is moot because DCFS has already removed and reassigned new caseworkers to the matter. Generally, a court of review will dismiss an appeal where it has notice of facts which show that only moot questions or mere abstract propositions are involved or where the substantial questions raised in the trial court no longer exist. People v. D.T., 287 Ill.App.3d 408, 410, 222 Ill.Dec. 714, 678 N.E.2d 326 (1997). An appeal becomes moot where the issues involved at the trial level no longer exist because events have occurred that render it impossible for the reviewing court to grant effective relief. In re A.D.W., 278 Ill.App.3d 476, 480, 215 Ill.Dec. 308, 663 N.E.2d 58 (1996). However, a court of review may resolve an otherwise moot issue if it involves a substantial public interest. In re J.R., 307 Ill.App.3d 175, 179, 240 Ill.Dec. 375, 717 N.E.2d 468 (1999). The criteria for the application of the public interest exception are: (1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will recur. In re A Minor, 127 Ill.2d 247, 257, 130 Ill.Dec. 225, *20 537 N.E.2d 292 (1989). A clear showing of each criterion is required to bring a case within the public interest exception. In re J.R., 307 Ill.App.3d at 179, 240 Ill.Dec. 375, 717 N.E.2d 468.
For practical purposes, it would be impossible for us to grant effectual relief at this point in view that DCFS removed and reassigned new caseworkers to the matter in 1998. Regardless, we do not find the appeal is moot as a matter of law, as it meets all the criteria for the public interest exception to the mootness doctrine. To begin, the case raises an issue of public concern, as it involves the right of a court to supersede the discretion of DCFS in determining which caseworkers may be assigned to a particular matter. See In re R.V., 288 Ill.App.3d 860, 867, 224 Ill.Dec. 345, 681 N.E.2d 660 (1997) (DCFS's interest in being able to conduct investigations without judicial interference is a public concern). Moreover, the issue is most likely to recur in juvenile proceedings and clarification of the issue for judges in the future would be desirable. See In re A.H., 312 Ill.App.3d 638, 646, 246 Ill.Dec. 6, 729 N.E.2d 6 (2000) (appellate court would consider technically moot issue of whether the circuit court had authority to preempt the authority of DCFS in removing a child from a foster home where issue was likely to recur and clarification was desirable.). Mootness aside, the case therefore qualifies for review.
The first contention raised by appellant is that the circuit court lacked subject matter jurisdiction under the Juvenile Court Act to order DCFS to remove the caseworkers assigned to the matter and to reassign new caseworkers. Appellant contends, citing to In re M.M., 156 Ill.2d 53, 66, 189 Ill.Dec. 1, 619 N.E.2d 702 (1993), that because juvenile proceedings are special statutory proceedings, having no counterpart in common law or equity, a circuit court's subject matter jurisdiction is strictly limited to that conferred by the legislature under the Juvenile Court Act. We find this argument to be without merit as it ignores the Illinois Supreme Court's decision in In re Lawrence M., 172 Ill.2d 523, 219 Ill.Dec. 32, 670 N.E.2d 710 (1996). In Lawrence M., the Illinois Supreme Court was asked to determine whether a circuit court had subject matter jurisdiction under the Juvenile Court Act to order DCFS to provide and pay for the inpatient drug treatment of a mother whose children were removed from her custody. There, the court adopted the special concurrence of Chief Justice Miller in M.M., stating that because jurisdiction is conferred by the constitution and not by statute, except as to administrative review, circuit courts "no longer seek statutory justification for the exercise of jurisdiction." Lawrence M., 172 Ill.2d at 529, 219 Ill.Dec. 32, 670 N.E.2d 710. Applying the rationale of Lawrence M. to the instant case, it is clear that because the circuit court's jurisdiction was constitutional, rather than statutory, its subject matter jurisdiction was not limited by the Juvenile Court Act.
Appellant also attacks the statutory authority of the circuit court under the Juvenile Court Act to order the removal and reassignment of DCFS' caseworkers. Although appellant frames this argument as an extension of its attack upon the court's subject matter jurisdiction, it is actually a separate issue. While a circuit court's jurisdiction is constitutionally derived, a court still may not act in ways inconsistent with controlling statutory law. Lawrence M., 172 Ill.2d at 529, 219 Ill.Dec. 32, 670 N.E.2d 710. Here, the question of whether the circuit court acted contrary to the provisions of the Juvenile Court Act is an issue separate and apart from the issue of jurisdiction. As resolution of this issue entails statutory interpretation, we employ *21 a de novo standard of review. In re D.D., 312 Ill.App.3d 806, 809, 245 Ill.Dec. 388, 728 N.E.2d 119 (2000).
In interpreting a statute, the court may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims. People v. Pullen, 192 Ill.2d 36, 42, 248 Ill.Dec. 237, 733 N.E.2d 1235 (2000). However, any judicial inquiry must always begin with the language of the statute, which is the surest and most reliable indicator of legislative intent. Pullen, 192 Ill.2d at 42, 248 Ill. Dec. 237, 733 N.E.2d 1235. A statute's language should be given its plain and ordinary meaning, and where the statutory language is clear and unambiguous, a court will not resort to aids of construction. Pullen, 192 Ill.2d at 42, 248 Ill.Dec. 237, 733 N.E.2d 1235. In ascertaining the legislative intent, the court examines the language of the statute as a whole and considers each part or section in connection with every other part or section. Antunes v. Sookhakitch, 146 Ill.2d 477, 484, 167 Ill. Dec. 981, 588 N.E.2d 1111 (1992).
There is no question under the Juvenile Court Act that DCFS, through its caseworkers, has an affirmative duty to provide full, accurate and timely reports and case plans to the court and to the parties. In the context of permanency hearings, section 2-28(2) specifically provides:
"The public agency that is the custodian or guardian of the minor, or another agency responsible for the minor's care, shall ensure that all parties to the permanency hearings are provided a copy of the most recent service plan prepared within the prior 6 months at least 14 days in advance of the hearing. If not contained in the plan, the agency shall also include a report setting forth (i) any special physical, psychological, educational, medical, emotional, or other needs of the minor or his or her family that are relevant to a permanency or placement determination and (ii) for any minor age 16 or over, a written description of the programs and services that will enable the minor to prepare for independent living." (Emphasis added.) (705 ILCS 405/2-28(2) (West 1996)).
Section 2-28(1) further provides:
"The Court may require any legal custodian or guardian of the person appointed under this Act to report periodically to the court or may cite him into court and require him or his agency, to make a full and accurate report of his or its doings in behalf of the minor. * * * Upon the hearing of the report the court may remove the custodian or guardian and appoint another in his stead or restore the minor to the custody of his parents or former guardian or custodian." 705 ILCS 405/2-28(1) (West 1996).
In conjunction, section 8.3 of the Abused and Neglected Child Reporting Act mandates:
"The Department shall assist a Circuit Court during all stages of the court proceedings in accordance with the purposes of this Act and the Juvenile Court Act of 1987 by providing full, complete, and accurate information to the court and by appearing in court if requested by the court." 325 ILCS 5/8.3 (West 1996).
Where DCFS fails to perform its statutory obligation to provide timely and complete reports, however, the Juvenile Court Act and the Abused and Neglected Child Reporting Act set forth particular remedies. Specifically, section 2-28(2) of the Juvenile Court Act provides that the rights of wards of the court will be "enforceable against any public agency by complaints for relief by mandamus." 705 ILCS 405/2-28(2) (West 1996). Section 2-28(1) of the Act further provides that *22 "[u]pon the hearing of the report the court may remove the custodian or guardian and appoint another in his stead or restore the minor to the custody of his parents or former guardian or custodian." 705 ILCS 405/2-28(1) (West 1996). In conjunction, section 8.3 of the Abused and Neglected Child Reporting Act indicates that "[f]ailure to provide assistance requested by a court shall be enforceable through proceedings for contempt of court." 325 ILCS 5/8.3 (West 1996). Thus, where DCFS fails to satisfy its statutory obligation to report, three potential remedies exist: removal of the guardian and the appointment of another (705 ILCS 405/2-28(1) (West 1996)), a mandamus action to compel the performance (705 ILCS 405/2-28(2) (West 1996)), and the initiation of contempt proceedings (325 ILCS 5/8.3 (West 1996)). Before a guardian may be removed or a public agency compelled to perform its duty, however, the court first must be satisfied by proof that the guardian has not performed its duty. In re F.B., 206 Ill.App.3d 140, 156, 151 Ill.Dec. 196, 564 N.E.2d 173 (1990).
In this case, after repeated orders to compel were ignored, and after the caseworkers tendered a report lacking certain information necessary to a permanency determination, the court ordered the removal of the caseworkers and the assignment of new caseworkers. This action, we find, was within the court's express statutory authority under section 2-28(1), which allows the court, after hearing a guardian's report, to order the removal and replacement of the guardian. That DCFS, as an entity, was retained as guardian, while the caseworkers handling the case were ordered to be removed and replaced, is a fact without practical significance in our opinion. Under the Act, a court is empowered to enter any order necessary to "fulfill the service plan" (705 ILCS 405/2-23(3) (West 1996)) or "effectuate the completion of a plan or goal" (705 ILCS 405/2-28(3)(b)(v) (West 1996)) in a dispositional or permanency hearing. Here, the court's determination to order the removal and reassignment of alternative caseworkers fell within the reach of this broad statutory authority.
In reaching our determination, we recognize that sections 2-23(3) and 2-28 specifically deny courts the power to order "specific placements, specific services, or specific service providers" even where DCFS abuses its discretion in setting a current case plan or permanency goal. 705 ILCS 405/2-28(2), 2-23(3) (West 1996). We also recognize, as a general principle, that courts do not have the authority to dictate the manner in which an agency of the executive branch performs a statutory duty. In re Detention of Hayes, 321 Ill. App.3d 178, 192-93, 254 Ill.Dec. 404, 747 N.E.2d 444 (2001). However, there is a distinction between ordering the removal and the reassignment of alternative caseworkers and ordering that specific caseworkers be assigned to a case. See In re A.L., 294 Ill.App.3d 441, 228 Ill.Dec. 746, 689 N.E.2d 1167 (1998) (A court's order dictating placement in a specific foster home differed from an order directing removal from a foster home and alternative placement, in that the latter order still allowed DCFS to exercise its discretion in determining placement). In this case, the circuit court, while ordering the removal of specific caseworkers from the case, still left to the discretion of DCFS the determination of which alternative caseworkers to assign to the matter. This fact distinguishes the present case from cases cited by appellant as analogous, wherein the circuit court simply substituted its discretion for that of DCFS by ordering specific services and providers. See In re P.F., 265 Ill.App.3d 1092, 202 Ill.Dec. 848, 638 N.E.2d 716(1994) (the circuit court does not have statutory authority to order a caseworker from a private agency, with *23 whom DCFS has contracted, to remain the caseworker on a case); In re R.V., 288 Ill.App.3d 860, 224 Ill.Dec. 345, 681 N.E.2d 660 (1997) (the circuit court does not have statutory authority to order DCFS to videotape all interviews with a minor in a case involving allegations of sexual abuse). By contrast, the circuit court here, acting within the bounds of its statutory authority, left the decision of which specific caseworkers to assign to the matter to the discretion of DCFS.
Finally, appellant contends that the circuit court's order violated the separation of powers doctrine, in that the court impermissibly infringed upon the internal administrative discretion of DCFS, an executive agency.
Under the Illinois Constitution, the legislative, executive and judicial branches are separate and no branch may exercise powers properly belonging to another. Ill. Const. 1970, art. II, § 1. However, the doctrine of separation of powers was not designed to achieve a complete divorce among the three branches of government, nor does it require governmental powers to be divided into rigid, mutually exclusive compartments. Hayes, 321 Ill. App.3d at 191, 254 Ill.Dec. 404, 747 N.E.2d 444. When the legislature creates a statute that contemplates an interplay between the courts and the executive branch, court orders directing the actions of the executive agencies do not violate the doctrine of the separation of powers. Lawrence M., 172 Ill.2d at 529, 219 Ill.Dec. 32, 670 N.E.2d 710. Under the Juvenile Court Act, where the legislature intends an interplay between DCFS and the courts in determining the appropriate services for neglected and abused children, the evil of the court's usurping the executive discretion is absent. Lawrence M., 172 Ill.2d at 528-29, 219 Ill.Dec. 32, 670 N.E.2d 710.
We do not find the court's action, in ordering the removal and reassignment of alternative caseworkers, impermissibly infringed upon the administrative discretion of DCFS, as an agency of the executive branch. As previously pointed out, the court here did not order that specific caseworkers be assigned to the matter. Rather, the court, having determined the current team of caseworkers had not fulfilled its statutory obligation to report, simply ordered the removal and reassignment of an alternative team. The ultimate determination of which caseworkers to assign to the matter, therefore, remained within the discretion of DCFS. In our judgment, this interplay between DCFS and the court, in a situation where assigned caseworkers fail to satisfy a duty to report, is one that the legislature specifically contemplated and sanctioned under the Act.
For the foregoing reasons, the judgment of the circuit court is affirmed.
Affirmed.
McNULTY, and COUSINS, JJ., concur.