NOTICE
This Order was filed under
Supreme Court Rule 23 and is not
precedent except in the limited
circumstances allowed under Rule
23(e)(1).

2021 IL App (4th) 200581-UNO. 4-20-0581

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 9, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.S., a Minor | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
|     Petitioner-Appellee, | ) | No. 18JA81 |
|     v. | ) | |
| Amanda W., | ) | Honorable |
|     Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding (1) it lacked jurisdiction to review respondent's claim the agency failed to file a timely integrated assessment and first service plan within 45 days of the shelter care hearing and (2) the trial court's best-interest finding was not against the manifest weight of the evidence.

¶ 2    On November 4, 2020, the trial court terminated the parental rights of respondent, Amanda W., as to her child, J.S. (born August 9, 2018). Respondent father, Treshon S., is not a party to this appeal. On appeal, respondent argues (1) the agency failed to file a timely integrated assessment and first service plan within 45 days of the shelter care hearing and (2) the trial court's best-interest finding was against the manifest weight of the evidence. For the following reasons, we affirm.

¶ 3               I. BACKGROUND

¶ 4               A. Initial Proceedings

¶ 5          On August 13, 2018, the State filed a petition for adjudication of wardship, alleging J.S. was neglected (705 ILCS 405/2-3(1)(b) (West 2016)), where the minor's environment was injurious to her welfare because respondent (1) failed to correct the conditions which resulted in the termination of her parental rights as to J.S.'s sibling, A.B., in McLean County case No. 15-JA-122 and (2) exposed her to domestic violence. At an August 14, 2018, shelter care hearing, respondent father stipulated "to probable cause and an immediate and urgent necessity." Based on the stipulation and information provided to the trial court, the court found probable cause to believe J.S. was neglected and that it was a matter of immediate and urgent necessity to remove J.S. from respondent's care. The court granted the Department of Children and Family Services (DCFS) temporary custody of J.S.

¶ 6          At an October 9, 2018, adjudicatory hearing, respondent stipulated to the allegation of neglect in the State's petition that J.S.'s environment was injurious to her welfare where respondent failed to correct the conditions which resulted in the termination of her parental rights as to J.S.'s sibling, A.B., in McLean County case No. 15-JA-122. The trial court continued the matter under supervision for 12 months and entered a protective order. The court admonished respondent to cooperate with services and visitation. On October 26, 2018, the State filed a petition to revoke supervision because police responded to three incidents involving respondent or respondent father violating the supervision order. At a November 6, 2018, hearing, respondent stipulated to the allegations in the petition to revoke supervision. Subsequently, the court vacated the supervision order and entered an adjudicatory order finding J.S. neglected.

¶ 7 Following a February 7, 2019, dispositional hearing, the trial court found (1) respondent unfit, (2) made J.S. a ward of the court, and (3) continued guardianship and custody of J.S. with DCFS.

¶ 8 B. Termination Proceedings

¶ 9 In March 2020, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was unfit because she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to J.S.'s welfare (750 ILCS 50/1(D)(b) (West 2016)), (2) make reasonable efforts to correct the conditions that were the basis for the removal of J.S. from respondent nine months after an adjudication of neglect, specifically June 16, 2019, to March 16, 2020 (750 ILCS 50/1(D)(m)(i) (West 2016)), and (3) make reasonable progress toward the return of J.S. within nine months after an adjudication of neglect, specifically, June 16, 2019, to March 16, 2020 (750 ILCS 50/1(D)(m)(ii) (West 2016)).

¶ 10 1. *Fitness Hearing*

¶ 11 On July 14, 2020, the trial court conducted a bifurcated hearing on the petition to terminate parental rights, first considering respondent's fitness. At the hearing, respondent stipulated she failed to make reasonable progress toward the return of J.S. within nine months after an adjudication of neglect, specifically, June 16, 2019, to March 16, 2020 (750 ILCS 50/1(D)(m)(ii) (West 2016)). The State dismissed the remaining allegations of unfitness. Based on respondent's stipulation and an extensive factual basis offered by the State, the court found respondent unfit by clear and convincing evidence.

¶ 12 2. *Best-Interest Hearing*

¶ 13 Over a two-day period in October and November 2020, the trial court held a best-interest hearing where the court heard testimony and received best-interest reports from

Court Appointed Special Advocates (CASA) and The Baby Fold (Baby Fold). The court also considered the testimony elicited during the hearing.

¶ 14                              a. Best-Interest Reports

¶ 15        CASA reviewed the best-interest factors and recommended terminating respondent's parental rights, maintaining DCFS guardianship of J.S., and keeping J.S. in her current foster placement with the goal of adoption. CASA reported J.S. resided with her foster family the entire 23 months of her life. The foster family provided J.S. unconditional love and security, and J.S. continued to thrive in her current environment. In October 2019, respondent completed substance abuse treatment, but in December 2019, respondent received a citation for driving under the influence (DUI). While respondent completed domestic violence services and attended individual counseling, CASA found her overall progress inconsistent. Respondent engaged in weekly two-hour supervised visits with J.S. until March 2020, when visits ceased due to COVID-19. Respondent then engaged in visits with J.S. via Facetime. Respondent's and respondent father's relationship remained unclear throughout the life of the case.

¶ 16        Baby Fold reviewed the best-interest factors and recommended terminating respondent's parental rights and achieving permanency for J.S. through adoption by her foster family. The best-interest report indicated respondent exhibited a strong bond with J.S. but the foster family could provide J.S. with stability, support, and a substance-free home. J.S.'s foster parents took J.S. into care a few days after her birth. J.S. and her foster parents exhibited a strong bond, and the foster parents recently adopted J.S.'s half-sister, who also exhibited a strong bond with J.S.

¶ 17        Respondent's service plan included random drug screens, substance abuse treatment, domestic violence services, and mental health treatment. Respondent provided

negative drug screens. Respondent also completed domestic violence treatment and substance abuse treatment but was arrested in December 2019 for DUI. Respondent failed to consistently attend mental health services. Respondent engaged in weekly two-hour visitation with J.S. from August 2018 to March 2020 until COVID-19 prevented in-person visits. Respondent then engaged in visitation with J.S. via Facetime.

¶ 18    Baby Fold expressed concern regarding the relationship between respondent and respondent father. Respondent relied on respondent father as her primary source of transportation. When questioned by her caseworker, respondent repeatedly denied being pregnant. However, respondent eventually admitted she was pregnant and due in December 2020. Respondent alleged the father was unknown.

¶ 19                    b. Tina Holzhauer

¶ 20    Tina Holzhauer, J.S.'s foster mother, testified she and her husband, Bruce Butler, were J.S.'s biological great aunt and uncle. Bruce was respondent's uncle. Tina and Bruce previously adopted respondent's other child and J.S.'s half-sister, A.B. Tina and Bruce also had a 16-year-old daughter who resided with them. Tina testified J.S. came into their care when she was born. At Tina and Bruce's house, J.S. had her own bedroom with a pocket door to A.B.'s room. J.S. exhibited a strong bond with A.B., Tina, Bruce, and their daughter. J.S. called Tina and Bruce "mom" and "dad." Tina expressed a desire to adopt J.S. stating, "I feel her best interest is for us to adopt her."

¶ 21    Tina testified she spoke with respondent on July 13, 2020, about whether respondent was pregnant. Respondent admitted she engaged in sexual intercourse with respondent father in April 2020 but denied she was pregnant.

¶ 22                    c. Respondent

- 5 -

¶ 23 Respondent testified that on December 29, 2019, police pulled her over for a DUI, and she blew a 0.12. In response, respondent completed an alcohol program prior to her sentencing in that case. Respondent also attended Alcoholics Anonymous. Respondent maintained stable housing in Carlock, Illinois, and employment at a gas station. Respondent acknowledged J.S. exhibited a bond with A.B., Tina, and Bruce. If J.S. returned to respondent's care, she intended to move closer to Tina and Bruce to maintain that bond. Respondent testified she was pregnant and due in December 2020. Respondent denied respondent father was the baby's father. Respondent also denied telling Tina she engaged in sexual intercourse with respondent father.

¶ 24                                     d. Trial Court's Findings

¶ 25 After hearing recommendations from counsel and considering the best-interest factors, the trial court found it was in J.S.'s best interest to terminate respondent's parental rights. The court found multiple best-interest factors favored termination, including J.S.'s physical safety and wellbeing, development of J.S.'s identity by the foster parents, the foster parents' and siblings' bond with J.S., J.S.'s attachment, J.S.'s sense of security and familiarity, and permanency. While the court acknowledged respondent expressed genuine care, love, and affection for J.S., Tina and Bruce provided permanency for J.S. since her birth and continued to provide a stable and loving home.

¶ 26 As to visitation the court stated,

> "The [c]ourt would note that the global pandemic does not help the situation. I will say unequivocally here that that does not impact on the [c]ourt's decision. The fact that you could not have face-to-face visits with [J.S.] is not something that enters into this

[c]ourt's mind. It is not held against you. If there are other means by which you can have contact, albeit limited, I would look at that. But we weren't banned from having visitations. We were dealing with a global pandemic. Nobody knew how to handle it. ***

So, again, on the issue of visitation, I'm not holding it against [respondent father] that we have a global pandemic or against [respondent]. It is what it is and in part it's one of the reasons why [c]ourt doesn't have a problem with continuing cases during these times to give parents an opportunity to continue to work on services because of what we are dealing with.

But the Petition to Terminate Parental Rights was filed in March, right before we had our Shelter In Place Order, before we all knew what we were possibly dealing with. The world turned upside[-]down in the middle of March. Here we are in November addressing these issues."

¶ 27 The trial court found by a preponderance of the evidence that it was in the best interest of J.S. to terminate respondent's parental rights. Subsequently, the court entered a written order terminating respondent's parental rights.

¶ 28 This appeal followed.

¶ 29 II. ANALYSIS

¶ 30 On appeal, respondent argues (1) the agency failed to file a timely integrated assessment and first service plan within 45 days of the shelter care hearing and (2) the trial

court's best-interest finding was against the manifest weight of the evidence.  For the following reasons, we affirm.

¶ 31        Before proceeding to the merits of this appeal, we must address our jurisdiction to review respondent's complaint the agency failed to file a timely integrated assessment and first service plan within 45 days of the shelter care hearing.  Specifically, respondent argues "[t]here is no evidence in the court file or in testimony these documents were ever generated."  The State argues respondent forfeited this argument on appeal where respondent was aware the agency failed to file an integrated assessment and a service plan within 45 days of the shelter care hearing and declined to raise this issue on appeal following the adjudicatory and dispositional orders.  We agree with the State.

¶ 32        The trial court's dispositional order, entered February 7, 2019, was a final order subject to appeal.  See *In re Leona W.*, 228 Ill. 2d 439, 456, 888 N.E.2d 72, 81 (2008) (stating dispositional orders are regarded as final and appealable as a matter of right).  Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) required respondent to file a notice of appeal within 30 days after the trial court entered the dispositional order.  Respondent failed to do so.  In failing to timely appeal, respondent forfeited her opportunity to seek review of her claim the agency failed to file a timely integrated assessment and a first service plan within 45 days of the shelter care hearing.  The shelter care hearing took place on August 14, 2018, and the dispositional hearing took place on February 7, 2019.  At the time the court entered the dispositional order, more than 45 days elapsed since the shelter care hearing.  Because respondent failed to timely appeal the court's dispositional order, we lack jurisdiction to review respondent's timeliness claim on appeal.  See *In re Janira T.*, 368 Ill. App. 3d 883, 891, 859 N.E.2d 1046, 1054 (2006).  We now turn to whether the court's best-interest finding was against the manifest weight of the evidence.

¶ 33    "At the best-interest stage of termination proceedings the State bears the burden of proving by a preponderance of the evidence that termination [of parental rights] is in the child's best interest." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 290-91 (2009). The reviewing court will not reverse the trial court's best-interest determination unless it was against the manifest weight of the evidence. *Id.* A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate the court should have reached the opposite result. *Id.*

¶ 34    During the best-interest stage of termination proceedings, " 'The parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life.' " *In re T.A.*, 359 Ill. App. 3d 953, 959, 835 N.E.2d 908, 912 (2005) (quoting *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004)). The trial court takes into consideration the best-interest factors in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2018)).

¶ 35    It appears respondent first argues the trial court misinterpreted a DCFS rule about visitation and we should review *de novo* the court's misinterpretation. Specifically, respondent argues the court misinterpreted section 301.210 of Title 89 (89 Ill. Adm. Code 301.210, amended at 25 Ill. Reg. 11803 (eff. Sept. 14, 2001)), when the court stated to respondent, "The fact that you could not have face-to-face visits with [J.S.] is not something that enters into this [c]ourt's mind. It is not held against you."

¶ 36    Based on the record, we find the trial court in rendering its judgment as to the termination of respondent's parental rights did not address a DCFS rule or interpret the law. Rather, the court simply informed respondent her lack of in-person visitation due to the pandemic was no fault of her own so it would not hold the lack of in-person visits against her

when determining whether to terminate her parental rights. Because there is no legal point to review, *de novo* review does not apply. See *In re K.C.*, 325 Ill. App. 3d 771, 777, 759 N.E.2d 15, 20-21 (2001). We review the trial court's best interest finding under the manifest weight of the evidence standard of review.

¶ 37 Respondent challenges DCFS's and CASA's best-interest analysis and argues the decision to seek termination deprived respondent of an objective evaluation of her performance. Respondent alleges the State and the trial court failed to properly analyze the best-interest factors and emphasizes how important visitation is when bonding with an infant. We find the trial court sufficiently analyzed the best-interest factors and the factors weighed in favor of termination.

¶ 38 Before making a decision on termination, the court took into consideration the best-interest reports, recommendations from counsel, and considered the best-interest factors. The trial court acknowledged respondent expressed genuine care, love, and affection for J.S. Further, the court addressed the unusual circumstances that led to stopping the in-person visitation and reiterated respondent would not be penalized for the inability to visit in person. Even so, the court found multiple factors weighed in favor of termination, including J.S.'s physical safety and wellbeing, development of J.S.'s identity by the foster parents, the foster parents' and siblings' bond with J.S., J.S.'s attachment, and J.S.'s sense of security, familiarity, and permanency.

¶ 39 We find permanency is paramount in this case where Tina and Bruce took J.S. into care immediately after her birth. Tina testified J.S. calls her and Bruce "mom" and "dad." Tina and Bruce provided J.S. with stability, they met all her needs, and they expressed a willingness to adopt her, having already adopted her older sister. Thus, J.S. would be in a permanent living situation with her sibling, raised by parents who demonstrate no signs of

instability. Respondent's ability to meet J.S.'s needs is uncertain. Specifically, the record demonstrates respondent's failure to make progress toward the return of the child by completing services where respondent failed to consistently attend mental health treatment and was arrested for DUI in December 2019. Based on the evidence, we find the court's decision to terminate respondent's parental rights was in J.S.'s best interest and not against the manifest weight of the evidence. Accordingly, we affirm the court's judgment.

¶ 40                                III. CONCLUSION

¶ 41           For the following reasons, we affirm the trial court's judgment.

¶ 42           Affirmed.