NOTICE
Decision filed 03/05/21 The text
of this decision may be
changed or corrected prior to
the filing of a Petition for
Rehearing or the disposition of
the same.

2021 IL App (5th) 200039

NO. 5-20-0039

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* B.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| v. | ) | No. 19-JA-159 |
| | ) | |
| A.P. and D.S., | ) | |
| | ) | |
| Respondents | ) | |
| | ) | |
| | ) | |
| (The Department of Children and Family Services, | ) | Honorable |
| | ) | Martin J. Mengarelli, |
| Respondent-Appellant)). | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court, with opinion.
Presiding Justice Boie and Justice Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1      The Illinois Department of Children and Family Services (DCFS) appeals from an order of

the circuit court removing the private agency caseworker assigned to the subject case and directing

DCFS to act as the caseworker in the matter. On appeal, DCFS argues that the circuit court's order

directing DCFS to act as the caseworker should be vacated because the court lacked authority to

enter the order under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2018)).

We find the circuit court's order assigning DCFS as the case manager impermissibly interfered

with DCFS's internal administrative procedures and infringed upon DCFS's statutory authority to

1

contract with outside service agencies and to designate a private agency or employee as a caseworker. See 20 ILCS 505/23 (West 2018); 705 ILCS 405/1-17 (West 2018). Therefore, we vacate that portion of the circuit court's order assigning DCFS as the caseworker in this matter. The circuit court's order is affirmed in all other respects.

¶ 2                                    BACKGROUND

¶ 3      B.S. is the minor child of A.P. (Mother) and D.S. (Father). On July 18, 2019, the State filed a petition for adjudication of wardship for B.S., alleging he was a neglected minor, in that his environment was injurious to his welfare pursuant to section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2018)) and that his parents did not provide him with the proper or necessary support, education, or care pursuant to section 2-3(1)(a) (705 ILCS 405/2-3(1)(a) (West 2018)). The petition alleged that B.S. was "sheltered in custody" and currently residing in DFCS foster care. A temporary custody hearing was held the same day. Following the hearing, the circuit court found there was probable cause to believe B.S. was neglected, as defined by the Act. B.S. was removed from Mother and Father's custody, and temporary custody was given to DCFS with the power to place him in foster care. DCFS assigned case management responsibilities to Lutheran Children and Family Services (LCFS), a purchase of service agency.[1] On August 27, 2019, the court entered an order scheduling the adjudicatory hearing for October 3, 2019, and directing the "[a]gency to file the service plan affidavit and the visitation plan within 10 days of the entry of this order."

¶ 4      On October 3, 2019, the court conducted an adjudicatory hearing on the allegations regarding Father. The court granted the State's petition as to Father, finding he neglected B.S., in that B.S. suffered from a lack of support, education, and remedial care and was in an environment

---

[1]A "purchase of service provider" is defined as "an agency (i.e., child welfare agency, group home, child care institution, maternity care and child care facility) or individual offering services to a Department client through a signed contract with the Department." 89 Ill. Adm. Code 412.20 (2015).

injurious to his welfare. The court found that Mother and Father had substance abuse issues which impaired their ability to adequately care for B.S. The court found that drugs and drug paraphernalia had been found in the home within the reach of the minor and that his parents had recently tested positive for controlled substances. The court also found that Mother and Father had a history of domestic violence, had pending criminal charges, and lacked appropriate housing. The order stated that the "[t]erms and conditions concerning the temporary custody of the minor(s) remain as previously set forth in the Temporary Custody Order." The court's order also included handwritten notes stating that the "[a]gency failed to file a report" and that "DCFS [is going] to file [a] service plan."

¶ 5    The court also set the adjudicatory hearing as to Mother and the dispositional hearing for both parents for November 12, 2019. On November 12, 2019, the circuit court entered an adjudicatory order finding Mother neglected B.S., in that B.S. suffered from a lack of support, education, and remedial care and was in an environment injurious to his welfare. The order also provided that the "[t]erms and conditions concerning the temporary custody of the minor(s) remain as previously set forth in the Temporary Custody Order." The court included the following handwritten provision: "Due to case being open 5 months and no service plan being in place, case assigned to DCFS proper-LCFS removed." That day, the court also entered an order rescheduling the dispositional hearing because "DCFS/POS failed to file [the] required court report one (1) week prior to this setting." The court again ordered the agency to file the required report with the court at least one week prior to the hearing, which was eventually set for December 17, 2019.

¶ 6    On December 11, 2019, DCFS filed a motion requesting the court reconsider and vacate that portion of the November 12, 2019, adjudicatory order stating that the case was "assigned to DCFS proper." DCFS argued that the Act prohibited the court from ordering specific service

3

providers, the court lacked subject matter jurisdiction to enter the order, and the order violated the doctrine of separation of powers.

¶ 7    On December 17, 2019, the circuit court entered another order rescheduling the dispositional hearing, this time for January 7, 2020, because "[t]he former DCFS/POS failed to file the required court report one (1) week prior to this setting." The court again ordered the agency to provide the required report at least one week prior to the new setting.

¶ 8    On January 7, 2020, the court denied DCFS's motion to reconsider vacating the November 12, 2019, adjudicatory order assigning DCFS as the case manager. The court stated that it "agree[d] with DCFS that this court cannot by law order specific placements, services or service providers; however, removing the private agency that is managing the case and requiring DCFS to manage the case in-house is not prohibited." The court found that, as of the November 12, 2019, hearing, the case was over five months old and a service plan was still not in place to correct the conditions that led to the minor being brought into care. The court found that removal of LCFS was necessary because LCFS was infringing upon the parents' fundamental liberty interests and was acting in a manner that was contrary to the best interests of the minor.

¶ 9    Also, on January 7, 2020, following the dispositional hearing, the court entered a dispositional order finding Mother and Father were unfit to care for B.S. and that it was in the best interests of the minor that he be removed from their custody. The court adjudicated B.S. a ward of the court and granted DCFS guardianship and custody of B.S. The order included the following provision:

"The Department of Children and Family Services is the only agency accountable to the Court for the full and complete implementation of this Order and is the only agency with full knowledge of the services available. The Guardianship Administrator is ordered to

4

personally appear, or by assigned caseworker, at the permanency hearing with the minor(s) unless the presence of the minor(s) is specifically excused by the Court prior to said hearing. This requirement may not be delegated to another agency."

¶ 10    On February 5, 2020, DCFS filed a motion to vacate or modify the January 7, 2020, dispositional order. DCFS requested that the court vacate paragraph 10 of the dispositional order, asserting that the provision constituted an improper order for a specific service provider and violated the separation of powers doctrine and that the court lacked subject matter jurisdiction to enter the order.

¶ 11    Also, on February 5, 2020, counsel from the Illinois Attorney General's Office filed a premature notice of appeal on behalf of DCFS, appealing from the court's November 12, 2019, and January 7, 2020, orders. On July 2, 2020, the circuit court entered an order denying DCFS's motion to vacate or modify the January 7, 2020, dispositional order.[2]

¶ 12                                        ANALYSIS

¶ 13    On appeal, DCFS argues that those portions of the circuit court's November 12, 2019, adjudicatory order, and January 7, 2020, dispositional order, assigning DCFS as the case manager in this matter must be vacated because the court lacks authority under the Act to order that DCFS be the "service provider" in a neglect proceeding. Neither the state's attorney, nor any other party,

---

[2]In child neglect proceedings, an adjudicatory order is not a final order, but the dispositional order is a final order and may be appealed. *In re D.R.*, 354 Ill. App. 3d 468, 473 (2004). Claims pertaining to the adjudicatory hearing are appealable upon entry of the circuit court's dispositional order. *In re D.R.*, 354 Ill. App. 3d at 473. To be timely, a postjudgment motion must be filed within 30 days of entry of the order that it is challenging. 735 ILCS 5/2-1203(a) (West 2018). A timely postjudgment motion, however, tolls the time for filing an appeal, such that notice of appeal must be filed within 30 days of resolution of the postjudgment motion. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). When a timely postjudgment motion has been filed, any notice of appeal filed while the motion is pending becomes effective when the order disposing of the motion is entered. Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017).

has filed an appellee's brief in this appeal. Nevertheless, we can dispose of the appeal on its merits. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976).

¶ 14   Questions of statutory construction are issues of law that this court reviews *de novo*. *In re N.M.*, 2014 IL App (4th) 130604, ¶ 16. "The primary goal in construing a statute is to ascertain and give effect to the legislature's intent," and the language of the statute is the most reliable indicator of that intent. (Internal quotation marks omitted.) *In re N.M.*, 2014 IL App (4th) 130604, ¶ 16. A statute's language should be given its plain and ordinary meaning. *In re K.C.*, 325 Ill. App. 3d 771, 777 (2001); *In re N.M.*, 2014 IL App (4th) 130604, ¶ 16. When the language of the statute is clear and unambiguous, the court will not resort to extrinsic aids of statutory construction. *In re K.C.*, 325 Ill. App. 3d at 777. When ascertaining the legislative intent, the court examines the language of the statute as a whole, considering every part or section in connection with each other. *In re K.C.*, 325 Ill. App. 3d at 777.

¶ 15   The Act sets forth a step-by-step process for deciding whether a child should be removed from his parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). This case was initiated when the state's attorney filed a petition for adjudication of wardship, pursuant to section 2-13 of the Act (705 ILCS 405/2-13 (West 2018)), alleging that B.S. was a neglected minor, and that he was currently residing in DFCS foster care. After a petition for adjudication is filed, the court will hold a temporary custody hearing, pursuant to section 2-10 of the Act, to determine whether there is probable cause to believe that the minor has been abused or neglected and, if necessary, will assign temporary custody to someone other than the parents or current guardian. 705 ILCS 405/2-10(2) (West 2018). The court may award custody to DCFS at this time. 705 ILCS 405/2-10(2) (West 2018). The court must also find that there is an "immediate and urgent necessity for the safety and protection of the minor" and that reasonable efforts have been made

6

or that no efforts reasonably can be made to prevent or eliminate the necessity for removal of the minor from the home in order to place the child in shelter care.[3] 705 ILCS 405/2-10(2) (West 2018). Section 2-10 provides that if the minor is placed in a DCFS shelter care facility, the court shall, upon request, appoint the DCFS guardianship administrator as the minor's temporary custodian, and the court

> "may enter such other orders related to the temporary custody as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause or to the finding of the existence of immediate and urgent necessity." 705 ILCS 405/2-10(2) (West 2018).

¶ 16　After a petition for wardship has been filed and the minor has been placed in temporary custody, the proceeding moves to the adjudicatory stage. The circuit court must make a finding that the child is abused, neglected, or dependent during the first adjudicatory stage before moving to the second stage, where the court conducts an adjudication of wardship. 705 ILCS 405/2-21 (West 2018); *In re Arthur H.*, 212 Ill. 2d at 462. During the second stage, at the dispositional hearing, the court determines whether "it is consistent with the health, safety and best interests of the minor and the public that he be made a ward of the court." 705 ILCS 405/2-21(2) (West 2018). If the court orders that the minor be made a ward of the court and determines that the minor's parents are unfit to care for the child, the court may appoint the guardianship administrator of DFCS as the minor's guardian. 705 ILCS 405/2-27(1)(a), (d) (West 2018).

¶ 17　The Act provides that if the minor is placed in shelter care with DCFS, as was done in this

---

[3]"Shelter" is defined as "the temporary care of a minor in physically unrestricting facilities pending court disposition or execution of court order for placement." 705 ILCS 405/1-3(14) (West 2018). "Shelter placement" is defined as "a temporary or emergency placement for a minor, including an emergency foster home placement." 705 ILCS 405/1-3(14.05) (West 2018).

case, DCFS shall prepare and file a case plan or service plan consistent with the health, safety, and best interests of the minor with the court within 45 days of placement.[4] 705 ILCS 405/2-10.1 (West 2018). The service plan shall be "designed to stabilize the family situation and prevent placement of a child outside the home of the family" when appropriate, "shall provide for the utilization of family preservation services," and shall be reviewed and updated every six months. 20 ILCS 505/6a(a) (West 2018). Family preservation services are defined as "all services to help families" and include a wide range of services, such as therapy, substance abuse counseling, and housing assistance. 325 ILCS 5/8.2 (West 2018). Specific services in the service plan "may include but are not limited to: case management services; homemakers; counseling; parent education; day care; emergency assistance and advocacy assessments; respite care; in-home health care; transportation to obtain any of the above services; and medical assistance." 325 ILCS 5/8.2 (West 2018).

¶ 18    Furthermore, the court may require the legal custodian or guardian to periodically report to the court regarding his efforts on behalf of the minor at the permanency hearings. 705 ILCS 405/2-28(1) (West 2018). The Act requires the legal custodian or guardian to provide the parties with a copy of the most recent service plan at least 14 days in advance of the permanency hearing. 705 ILCS 405/2-28(2) (West 2018). The agency's written permanency report must set forth the progress, or lack of progress, made by the parents in correcting the conditions requiring the child to be in care and whether the child can be returned home without jeopardizing the child's health, safety, and welfare. 705 ILCS 405/2-28(2) (West 2018). If the agency determines that the child cannot be returned home, the agency's report must include a recommended permanency goal it

---

[4]Notably, under section 8.2 of the Abused and Neglected Child Reporting Act, DCFS is required to assess a family's need for services and, if necessary, develop an appropriate voluntary service plan whenever the Child Protective Service Unit determines there is credible evidence that a child is abused or neglected. 325 ILCS 5/8.2 (West 2018). Furthermore, section 6a(a) of the Children and Family Services Act (20 ILCS 505/6a(a) (West 2018)) provides that DCFS shall develop a case plan for every "client for whom the Department is providing placement service."

believes to be in the best interests of the child and why the other permanency goals are not appropriate. 705 ILCS 405/2-28(2) (West 2018). The services contained in the service plan must be reasonably related to remedying the conditions that gave rise to the removal of the child from the home or any condition that the court found must be remedied prior to the child's return home. 705 ILCS 405/2-28(2) (West 2018). The Act indicates that the caseworker must appear and testify at the permanency hearing. 705 ILCS 405/2-28(2) (West 2018). At the permanency hearing, the court determines the future status of the child and sets a permanency goal that is in the best interest of the child. 705 ILCS 405/2-28(2) (West 2018).

¶ 19    DCFS, however, may contract out its responsibilities, including case management, by "enter[ing] into agreements with any public or private agency determined appropriate and qualified by the Department *** that provide a comprehensive array of child and family services." 20 ILCS 505/23 (West 2018); *In re N.M.*, 2014 IL App (4th) 130604, ¶ 17. Furthermore, the legislature has granted DCFS the authority to appoint a private agency employee as the caseworker charged with managing the case and appearing before the court. Section 1-17 of the Act provides:

"With respect to any minor for whom the Department of Children and Family Services Guardianship Administrator is appointed the temporary custodian or guardian, the Guardianship Administrator may designate in writing a private agency or an employee of a private agency to appear at court proceedings and testify as to the factual matters contained in the casework files and recommendations involving the minor. The private agency or the employee of a private agency must have personal and thorough knowledge of the facts of the case in which the appointment is made. The designated private agency or employee shall appear at the proceedings. If the Court finds that it is in the best interests of the minor that an employee or employees of the Department appear in addition to the

9

private agency or employee of a private agency, the Court shall set forth the reasons in writing for their required appearance." 705 ILCS 405/1-17 (West 2018).

¶ 20    The Act provides for certain remedies in the event DCFS or its designated agency fails to perform its statutory obligations. Section 2-28(2) of the Act provides that the rights of wards under the Act are enforceable "against any public agency" through a *mandamus* action. 705 ILCS 405/2-28(2) (West 2018). Under section 2-28(1), upon receiving the permanency report of the assigned custodian or guardian, the court can remove the custodian or guardian and appoint another or may restore the minor to the custody of his parents or former guardian or custodian. 705 ILCS 405/2-28(1) (West 2018).

¶ 21    Furthermore, section 8.3 of the Abused and Neglected Child Reporting Act requires DCFS to assist the circuit court "during all stages of the court proceedings in accordance with the purposes of this Act and the Juvenile Court Act of 1987 by providing full, complete, and accurate information to the court and by appearing in court if requested by the court." 325 ILCS 5/8.3 (West 2018). Under this provision, the court may hold DCFS in contempt for failing to provide the requested assistance. 325 ILCS 5/8.3 (West 2018). Section 8.2 of the Abused and Neglected Child Reporting Act, which details service plans created by DCFS, provides that the juvenile court "may order [DCFS] to provide the services set out in the plan, if those services are not provided with reasonable promptness and if those services are available." 325 ILCS 5/8.2 (West 2018).

¶ 22    The Act also vests the juvenile court with considerable oversight over the propriety of the service plan. Specifically, the Act allows the court to reject the service plan and to order DCFS to modify the existing plan or to create a new one. 705 ILCS 405/2-23(3), 2-28(2) (West 2018). The court's power, however, is not unlimited. The Act prohibits the court from ordering that specific placements, services, or service providers be included in the service plan in a dispositional order

or a permanency review order. 705 ILCS 405/2-23(3), 2-28(2) (West 2018). Section 2-23, titled "Kinds of dispositional orders," provides:

"(3) The court also shall enter any other orders necessary to fulfill the service plan, including, but not limited to, (i) orders requiring parties to cooperate with services, (ii) restraining orders controlling the conduct of any party likely to frustrate the achievement of the goal, and (iii) visiting orders. *** If, after receiving evidence, the court determines that the services contained in the plan are not reasonably calculated to facilitate achievement of the permanency goal, the court shall put in writing the factual basis supporting the determination and enter specific findings based on the evidence. The court also shall enter an order for the Department to develop and implement a new service plan or to implement changes to the current service plan consistent with the court's findings. The new service plan shall be filed with the court and served on all parties within 45 days after the date of the order. The court shall continue the matter until the new service plan is filed. Except as authorized by subsection (3.5) of this Section or authorized by law, *the court is not empowered under this Section to order specific placements, specific services, or specific service providers to be included in the service plan.*[5]" (Emphasis added.) 705 ILCS 405/2-23(3) (West 2018).

¶ 23    Section 2-28, regarding permanency hearings, vests the court with similar oversight. As already noted, the Act requires the custodian or guardian to report to the court, which includes providing copies of the most recent service plan in advance of the hearing and requiring the

_____

[5]Section 2-23(3.5) allows the court to enter certain orders pertaining to a minor's current or planned placement if the court finds the placement is not necessary or appropriate. 705 ILCS 405/2-23(3.5) (West 2018).

11

caseworker to appear in court to testify. 705 ILCS 405/2-28(1), (2) (West 2018). At the hearing, the court determines the future status of the child and sets a permanency goal that is in the best interest of the child. 705 ILCS 405/2-28(2) (West 2018). The Act provides that:

> "If, after receiving evidence, the court determines that the services contained in the plan are not reasonably calculated to facilitate achievement of the permanency goal, the court shall put in writing the factual basis supporting the determination and enter specific findings based on the evidence. The court also shall enter an order for the Department to develop and implement a new service plan or to implement changes to the current service plan consistent with the court's findings. The new service plan shall be filed with the court and served on all parties within 45 days of the date of the order. The court shall continue the matter until the new service plan is filed. Except as authorized by subsection (2.5) of this Section and as otherwise specifically authorized by law, *the court is not empowered under this Section to order specific placements, specific services, or specific service providers to be included in the service plan*.[6]" (Emphasis added.) 705 ILCS 405/2-28(2) (West 2018).

¶ 24   On appeal, DCFS argues the plain language of sections 2-23(3) and 2-28(2) prohibits the court from ordering "specific service providers" in neglect proceedings. DCFS argues that the circuit court exceeded its statutory authority under the Act by assigning DCFS as the caseworker, as this constitutes an order for a "specific service provider."

¶ 25   Initially, we note that, for purposes of appeal, this court is left to assume that the circuit court's determination that it was necessary to remove LCFS as the case manager was correct and

---

[6]Section 2-28(2.5) allows the court to enter certain orders regarding a minor's current or planned placement if the court finds the placement is not necessary or appropriate. 705 ILCS 405/2-28(2.5) (West 2018).

12

supported by the record. In a footnote in its brief, DCFS maintains that the circuit court's removal of LCFS was not justified in this case. DCFS argues that the basis of the circuit court's removal, that LCFS had not established a service plan as of November 12, 2019, was unsupported by the record because, "as the Department pointed out in its motions to reconsider and vacate," LCFS had completed an initial service plan on August 23, 2019. No service plan is in the record on appeal. DCFS maintains on appeal that no transcripts exist of any of the hearings conducted in the circuit court. DCFS has elected not to provide this court with a substitute for a report of proceedings, such as a bystander's report or an agreed statement of facts. See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017). The representation made by DCFS of a fact set forth within a motion to reconsider is insufficient to rebut the circuit court's finding that there was no service plan in place as of November 12, 2019, and that LCFS's actions and omissions were "contrary to the minor's best interests." Nothing in the record definitively demonstrates that these findings by the court were erroneous. Instead, the record unequivocally demonstrates that LCFS repeatedly failed to abide by the circuit court's orders and did not timely file necessary reports with the court. Based on the lack of any evidence to the contrary, we find the circuit court's determination that it was necessary to remove LCFS as the case manager was proper and in the best interests of the minor.

¶ 26    On appeal, DCFS challenges the circuit court's authority to order that DCFS act as the caseworker in this matter. DCFS asserts this directive is present in both the November 12, 2019, adjudicatory order and in the January 7, 2020, dispositional order. Before we can address the merits of DCFS's primary legal challenge, we must briefly address DCFS's assertion that the dispositional order contains a directive that DCFS act as the caseworker. Paragraph 10 of the January 7, 2020, dispositional order states:

13

"The Department of Children and Family Services is the only agency accountable to the Court for the full and complete implementation of this Order and is the only agency with full knowledge of the services available. The Guardianship Administrator is ordered to personally appear, or by assigned caseworker, at the permanency hearing with the minor(s) unless the presence of the minor(s) is specifically excused by the Court prior to said hearing. This requirement may not be delegated to another agency."

¶ 27 Preliminarily, we note that this paragraph appears to be a standard provision in a preprinted dispositional order form utilized by the circuit court. Whether this paragraph is present in all dispositional forms utilized by the court is not clear from the record. Regardless, DCFS maintains that this provision constitutes an order directing that DCFS act as the caseworker. We disagree.

¶ 28 The Fourth District, in *In re N.M.*, 2014 IL App (4th) 130604, ¶¶ 4, 17, 18, found that a substantially similar provision constituted an order that a DCFS representative appear at court proceedings, in addition to the caseworker employed by the private agency, as contemplated by section 1-17 of the Act.[7] We agree with the Fourth District's interpretation of this provision and reject DCFS's contention that paragraph 10 of the dispositional order constitutes an order directing DCFS to act as the caseworker in this matter. Notably, the Fourth District held that section 1-17 requires the circuit court to make a finding that it would be in the best interests of the minor for a DCFS employee to appear at the hearings before entering an order requiring such. *In re N.M.*, 2014 IL App (4th) 130604, ¶ 19. Again, it is unclear from the record whether this provision was included in the dispositional order only because it is part of the preprinted form utilized by the circuit court

---

[7]As already noted, section 1-17 permits DCFS to designate a private agency, or employee thereof, to appear and testify at the neglect proceedings with respect to any minor for whom DCFS is appointed the temporary custodian or guardian. 705 ILCS 405/1-17 (West 2018). The provision, however, allows the circuit court to order that a DCFS employee appear in court in addition to the private agency employee, if the court finds that doing so would be in the best interests of the minor. 705 ILCS 405/1-17 (West 2018).

14

or whether the circuit court added this provision based on the circumstances presented in these proceedings. DCFS has not challenged this provision as having been improperly included without the necessary finding that requiring DCFS's appearance at the hearings would be in the best interests of the minor, either in this court or in the circuit court. Absent argument and factual findings on the issue, we will not invalidate this provision as violative of the dictates of the statute and *In re N.M.*, 2014 IL App (4th) 130604, ¶ 19.

¶ 29     We are thus left with the circuit court's November 12, 2019, adjudicatory order directing that LCFS be removed as the case manager and that the case be assigned to DCFS. On January 7, 2020, the court denied DCFS's motion to reconsider, stating it "agree[d] with DCFS that this court cannot by law order specific placements, services or service providers; however, removing the private agency that is managing the case and requiring DCFS to manage the case in-house is not prohibited." The court found that, as of the November 12, 2019, hearing, the case was over five months old and a service plan was still not in place to correct the conditions that were the bases of the minor being brought into care. The court ordered the change in the agency because it believed that LCFS was acting in a manner that was contrary to the minor's best interests.

¶ 30     The language of the circuit court's order denying DCFS's motion to reconsider suggests that the court believed it could order DCFS to manage the case because case management does not constitute an order for a "specific service provider," as contemplated by the limitations in sections 2-23(3) and 2-28(2) on the court's power to order "specific placements, specific services, or specific service providers to be included in the service plan." 705 ILCS 405/2-23(3), 2-28(2) (West 2018)). Contrary to the circuit court's order, section 8.2 of the Abused and Neglected Child Reporting Act provides that "case management services" are services that may be included in a service plan. 325 ILCS 5/8.2 (West 2018).

15

¶ 31 While this provision supports a finding that case management services are a "service[ ] ***" included in the service plan" and that DCFS, as an agency providing case management services, is a "service provider[ ] *** included in the service plan," DCFS has not provided this court with any citation to pertinent authority or any analysis supporting a finding that sections 2-23(3) and 2-28(2) of the Act, and the limitations on the court's power therein, apply to the circuit court's November 12, 2019, adjudicatory order. The courts have repeatedly interpreted these provisions as applying to either dispositional orders, under section 2-23(3), or orders related to permanency hearings, under section 2-28(2). See *In re Chiara C.*, 279 Ill. App. 3d 761, 765-66, 768 (1996) (juvenile court is disempowered from ordering specific services following a dispositional hearing under section 2-23(3), or following a permanency review hearing or its equivalent under section 2-28(2), and finding that section 2-10 governing temporary custody orders is inapplicable to permanency review hearings); *In re T.L.C.*, 285 Ill. App. 3d 922, 926-27 (1996) (under sections 2-23(3), the juvenile court cannot order specific placement of a minor when DCFS is granted guardianship in a dispositional order); *In re M.V.*, 288 Ill. App. 3d 300, 306 (1997) (noting sections 2-23(3) and 2-28(2) specifically preclude the juvenile court from ordering specific placements "after DCFS has been appointed guardian of the minor"); *In re A.L.*, 294 Ill. App. 3d 441, 446-47 (1998) (in a permanency review hearing, the juvenile court can, under sections 2-23(3) and 2-28(2), order DCFS to remove a minor from a foster care placement and to select another so long as the court does not select the new placement).

¶ 32 At the adjudicatory hearing, the court determines whether the minor is abused, neglected, or dependent, as demonstrated by a preponderance of the evidence. 705 ILCS 405/2-18(1), 1-3(1) (West 2018); *In re A.P.*, 2012 IL 113875, ¶ 19. At the dispositional hearing, the court determines whether it is consistent with the health, safety, and best interests of the minor and the public that

16

the minor be made a ward of the court. 705 ILCS 405/2-21(1), 1-3(6) (West 2018); *In re A.P.*, 2012 IL 113875, ¶ 21. "With reference to minors, a ward is an infant placed by authority of law under the care of a guardian, and such an infant is a ward of the court appointing the guardian." (Internal quotation marks omitted.) *In re Jennings*, 68 Ill. 2d 125, 133 (1977). A minor adjudged a "ward of the court" becomes "subject to the dispositional powers of the court under [the] Act." 705 ILCS 405/1-3(16) (West 2018). DCFS has presented this court with no authority or analysis suggesting that section 2-23(3) or section 2-28(2) apply to predispositional orders. Instead, precedent suggests that predispositional orders are governed by section 2-10, regarding temporary custody orders. See *In re A.H.*, 195 Ill. 2d 408, 417-19 (2001); *In re Lawrence M.*, 172 Ill. 2d 523 (1996).

¶ 33     Section 2-10(2) of the Act does not contain any restriction on the court's power to order specific services or service providers but, instead, provides that, if the minor is placed in a DCFS shelter care facility, the court "may enter such other orders related to the temporary custody as it deems fit and proper, including the provision of services to the minor or his family to ameliorate the causes contributing to the finding of probable cause or to the finding of the existence of immediate and urgent necessity." 705 ILCS 405/2-10(2) (West 2018). The Illinois Supreme Court has held that this provision authorizes the juvenile court to enter orders requiring DCFS to provide and pay for in-patient drug treatment services for a parent of children removed due to the parent's drug-related neglect of them. *In re Lawrence M.*, 172 Ill. 2d at 534-35[8]; see also *In re A.H.*, 195 Ill. 2d at 420 (section 2-10(2) allows the court to enter "orders related to the temporary custody"

_____

[8]The court's decision suggests that the circuit court's orders were appropriate even absent a clear recommendation by DCFS that in-patient drug treatment was essential for reunification, or an inclusion of this provision in a finalized service plan. *In re Lawrence M.*, 172 Ill. 2d at 534-35 (finding the record was unclear in one of the consolidated cases whether drug treatment was recommended, and rejecting DCFS's claim that the circuit court's order was premature because, "in most cases, DCFS should have a treatment plan in development prior to the temporary custody hearing").

17

which includes, but is not limited to, ameliorative services). This precedent suggests that the limitations on the court's authority to order specific services and service providers in sections 2-23(3) and 2-28(2) do not apply to predispositional orders governed by section 2-10. In this case, both of the adjudicatory orders specifically stated that the terms of the temporary custody order, in which DCFS was granted custody of B.S., were still in effect. It was not until January 7, 2020, in the dispositional order, that the juvenile court made B.S. a ward of the court and granted DCFS guardianship of B.S. The step between an adjudication of neglect and a dispositional order determining wardship is legally significant, and DCFS has not presented this court with any support for its position that sections 2-23(3) and 2-28(2) limit the juvenile court's authority in predispositional orders. Absent any citations to pertinent authority or any analysis by DCFS supporting its contention that sections 2-23(3) and 2-28(2) limit the court's authority beyond dispositional orders and permanency review orders, we will not reverse the circuit court on this basis.

¶ 34     This is not to say that the circuit court's order assigning DCFS as the case manager was proper. DCFS, as a state agency, "is invested by the legislature with a wide range of discretion in the exercise of its duties." *In re F.B.*, 206 Ill. App. 3d 140, 156 (1990). As already noted, the legislature has granted DCFS the authority to contract with "any public or private agency" for the provision of services. 20 ILCS 505/23 (West 2018). Moreover, the legislature has specifically granted DCFS the authority to designate a private agency or employee of a private agency as a caseworker. 705 ILCS 405/1-17 (West 2018).

¶ 35     The courts have held that the juvenile court may not interfere with DCFS's administrative discretion in choosing a caseworker. In *In re P.F.*, 265 Ill. App. 3d 1092, 1100, 1106 (1994), the appellate court reversed that portion of a circuit court's modified dispositional order directing the

18

private agency currently assigned as the case manager to continue in that role. The court held that the circuit court's appointment of the private agency was improper because it interfered with DCFS's administrative discretion. *In re P.F.*, 265 Ill. App. 3d at 1106. In *In re K.C.*, 325 Ill. App. 3d at 774, after a permanency review hearing, the circuit court found the caseworkers had not made reasonable efforts to provide services to facilitate achievement of the permanency goal and ordered the current team of caseworkers be removed and that a new team be assigned. The appellate court held that the juvenile court's broad statutory authority under sections 2-23 and 2-28 allowed the juvenile court to order the removal of a caseworker and the reassignment of another. *In re K.C.*, 325 Ill. App. 3d at 778. The court noted, however, that the "courts do not have the authority to dictate the *manner* in which an agency of the executive branch performs a statutory duty." (Emphasis in original.) *In re K.C.*, 325 Ill. App. 3d at 779. Thus, the court found that while the juvenile court may order the removal of a specific caseworker, the court could not direct which caseworker was to be assigned because doing so would interfere with DCFS's discretion. *In re K.C.*, 325 Ill. App. 3d at 779; see also *In re A.L.*, 294 Ill. App. 3d 441, 446-47 (1998) (in a permanency review hearing, the juvenile court can, under sections 2-23(3) and 2-28(2), order DCFS to remove a minor from a foster care placement and to select another so long as the court does not select the new placement).

¶ 36    We agree with the rationale of *In re P.F.*, 265 Ill. App. 3d 1092, and *In re K.C.*, 325 Ill. App. 3d 771, and find the juvenile court was permitted to order LCFS removed as the case manager for failing to fulfill its statutory duties. We find the juvenile court's broad authority under section 2-10 to "enter such other orders related to the temporary custody as it deems fit and proper" (705 ILCS 405/2-10(2) (West 2018)), including the provision of ameliorative services to the minor and his family, encompasses the power to remove a caseworker or case management agency that has

19

failed to fulfill its statutory obligations and to direct the assignment of a new case manager. This authority, however, does not allow the court to choose the new case manager or caseworker, as this power lies directly within DCFS's authority to contract with purchase service agencies pursuant to section 23 of the Children and Family Services Act (20 ILCS 505/23 (West 2018)) and to designate a private agency or an employee of a private agency as the caseworker and to appear in court on behalf of DCFS pursuant to section 1-17 of the Act (705 ILCS 405/1-17 (West 2018)). The juvenile court's order assigning DCFS as the case manager in this matter constitutes an impermissible interference in DCFS's internal administrative procedures and infringes upon DCFS's explicit statutory authority to contract with outside service agencies and to designate a private agency or employee as a caseworker. See 20 ILCS 505/23 (West 2018); 705 ILCS 405/1-17 (West 2018).[9]

¶ 37                                                   CONCLUSION

¶ 38    For the foregoing reasons, we vacate that portion of the circuit court's order directing DCFS to act as the case manager in this matter. We affirm the circuit court's order in all other respects.


¶ 39    Affirmed in part and vacated in part.

---

[9]DCFS's motion for leave to cite supplemental authority, ordered taken with the case, is denied. The purpose of allowing a party to cite additional authority is to bring the appellate court's attention to relevant or dispositive case law that was decided after the parties' briefs were filed. *People v. Molina*, 379 Ill. App. 3d 91, 99 (2008). DCFS's motion does not attempt to do this but instead seeks to direct this court's attention to orders entered in other pending juvenile cases not properly before this court.

**No. 5-20-0039**

| | |
|---|---|
| **Cite as:** | *In re B.S.*, 2021 IL App (5th) 200039 |
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 19-JA-159; the Hon. Martin J. Mengarelli, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Priyanka Gupta, Assistant Attorney General, of counsel), for appellant. |
| **Attorneys for Appellee:** | No brief filed for appellee. |