2023 IL App (1st) 231059-U
Order filed December 7, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-1059

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* M.R., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellee, | ) | Cook County. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | No. 21 JA 290 |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Honorable |
| | ) | Jennifer Payne, |
| Manuel L. and Gabriele R., | ) | Judge, presiding. |
| | ) | |
| Respondents-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Timothy M., | ) | |
| | ) | |
| Intervenor-Appellant). | ) | |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Martin and Ocasio III concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We dismiss the appeal of intervenor-foster parent in this adjudication of wardship case on mootness grounds where there has been a significant change in circumstances which preclude effective relief.

¶ 2 The intervenor-appellant, Timothy M., became a foster parent for the minor-appellee, M.R., after a petition for adjudication of wardship was brought against M.R.'s mother, Gabriele R., (the mother) and father, Manuel R., (the father). The circuit court allowed Timothy M. to intervene in the case as to the issue of M.R.'s placement only. After a hearing, the circuit court found the father fit to parent M.R.; returned M.R. to the care of the father with an order of protection; denied Timothy M.'s motion to change the permanency goal to substitute care pending determination of parental termination (substitute care) and to remove Child Link, the monitoring agency; and vacated the order granting Timothy M. intervenor status. Timothy M. appeals from the circuit court's denial of his motion to reconsider.

¶ 3 However, before the appeal was filed, the circuit court found the father in violation of the order of protection and entered a modified disposition order finding the father unable and unwilling to care for M.R. and M.R. was placed with his maternal aunt (aunt). The court also removed Child Link from the case. The court subsequently entered a permanency order with a goal of guardianship with the aunt. For the following reasons, we dismiss this appeal as moot.

¶ 4 In that we are deciding this case on mootness grounds, we set forth only those facts which are relevant to an understanding of the issues.

¶ 5 On or about March 20, 2021, the mother was caring for M.R. and his minor siblings M.A.R. and R.R. (the siblings), who are the children of the father and his now former wife Cassandra R. While in the mother's care, the siblings were seriously injured and the mother was arrested and criminally charged.

¶ 6 On March 30, 2021, the State filed a petition for adjudication of wardship of M.R. (born on September 22, 2020) against the mother and the father which asserted that M.R. was neglected due to an injurious environment and a substantial risk of physical injury. In support of the neglect

claim, the State alleged that medical personnel had concluded that the injuries suffered by the siblings while in the care of the mother were due to abuse and the father has a history of illegal substance use.

¶ 7    On that date, the court entered orders which granted temporary custody of M.R. to the guardianship administrator of the Department of Child and Family Services (DCFS), appointed a guardian *ad litem* (GAL), and allowed the mother and the father supervised day visits with M.R. However, in the criminal proceedings against the mother, the criminal court had imposed a condition of bond which prohibited her from having contact with M.R.

¶ 8    DCFS placed M.R. in the care of Timothy M. and his husband, Robert S., (the foster parents) on April 23, 2021. Child Link monitored the case on behalf of DCFS with Martha Vega as the supervisor and Sergio Casarez as the caseworker.

¶ 9    On October 13, 2021, the court held an adjudication hearing based on the parties' stipulation of facts. According to that stipulation, in March, while in the care of the mother only, M.A.R. suffered severe injuries to his groin area and other injuries to his face, head, neck, and back; and R.R. incurred facial bruises, abrasions, and significant hair loss on the back and top of her head. The father was married to, but separated from, Cassandra R., and they were planning to divorce. The father acknowledged a history of drug use.

¶ 10    The court entered an adjudication order finding M.R. was abused or neglected based on an injurious environment and a substantial risk of harm and a disposition order adjudging M.R. a ward of the court and finding both the mother and the father unable to care for him. In a separate order, the father was granted supervised visits with M.R. and unsupervised day visits at the discretion of DCFS.

¶ 11    On April 19, 2022, the court entered a permanency order with a goal that M.R. would be returned to the father within 5 months. The order noted that both parents were engaged in services and participating in visitations. Because the criminal court had modified the mother's condition of bond to allow contact with M.R., she was having supervised visits; the father was having unsupervised visits.

¶ 12    Timothy M., on August 17, 2022, filed a motion seeking to intervene in the case pursuant to section 1-5(2)(d) of the Juvenile Court Act of 1987 (Act). 705 ILCS 405/1(2)(d) (West 2022). In his motion, Timothy M. contended that it was in M.R.'s best interest to remain with the foster parents. He criticized Child Link, Garcia, and Vega with respect to their monitoring of the case. He also offered reasons for terminating the parental rights of the father and mother, including on the ground of adultery (ground j) (750 ILCS 50/1(D)(j) (West 2022)). Timothy M. requested that the court grant him standing and intervenor status, assign the matter to a different monitoring agency, order supervised visitations only, change the permanency goal to substitute care, and allow the foster parents access to M.R.'s medical records to determine whether he was born with drugs in his system. In the motion, Timothy M. revealed that he was a Cook County assistant state's attorney and had previously been assigned to the child protection courts.

¶ 13    The next day, the mother filed a combined emergency motion requesting that the court find M.R.'s placement with the foster parents unnecessary and inappropriate, and an objection to Timothy M.'s motion to intervene and his other requests for relief. The mother argued that the foster parents were not supportive of the goal of return home and have exhibited contempt for the mother and the father.

¶ 14    Then, on August 26, 2022, the Cook County State's Attorney Office filed a motion for the appointment of a special prosecutor in order to avoid any appearance of impropriety considering

Timothy M.'s position with the office. The court later granted this motion and the Office of the Lake County State's Attorney was appointed as special prosecutor.

¶ 15     While these motions were pending, on August 30, 2022, Child Link gave the foster parents written notice that M.R. was being removed from their home that day. The notice charged that the foster parents had impeded reunification and made it difficult to provide case management services. M.R. was moved to the home of the aunt where O.R., M.R.'s younger sibling, was living.[1] As a result, Timothy M. filed an emergency motion to intervene (second motion) which argued that M.R.'s removal from the foster parents' care was retaliatory in nature and not in the best interest of M.R. Timothy M. requested that the court grant him standing and intervenor status as to the emergency motion and order that M.R. be returned to the foster parents' home.

¶ 16     The court held a hearing on the second motion on September 1, 2022.

¶ 17     Timothy M. testified that Child Link was not providing him the opportunity to attend child and family team meetings and he was not notified that the goal was being changed to return home within five months. He had concerns about M.R.'s unsupervised visitations with the father but had not impeded them.

¶ 18     Vega testified that during a staffing on August 26, 2022, she and the director of Child Link made the decision to remove M.R. and place him with the aunt. Although Timothy M. did not agree with unsupervised or overnight visits with the father, he did not interfere with the visits. Vega admitted that there were no safety concerns with M.R.'s placement with the foster parents.

¶ 19     After the hearing, the court entered an order which granted Timothy M. standing to bring the second motion pursuant to 705 ILCS 405/1-5(2)(b) (West 2022) "because it was about the

---

[1] The mother and the father have a daughter, O.R. who was born while this case was pending and is not a party. The aunt is her guardian.

minor child being removed from his foster home." The court found there were no safety concerns with the foster parents' home and it was in M.R.'s best interest to remain there. During the hearing, the court voiced concerns that due to the timing of Child Link's removal of M.R. from the foster parents' home (coming on the heels of the first motion to intervene), its action could be construed as retaliatory.

¶ 20    DCFS filed a motion to reconsider this order. In response to the motion, Timothy M. argued that the Whistleblower Act (5 ILCS 430/15-10 (West 2022)) applied to this case in that Child Link, performing work on behalf of a state agency, retaliated against him, another state "employee" for reporting legitimate concerns about the welfare of M.R. During the hearing on the motion to reconsider, the court orally ruled that the Whistleblower Act did not apply to this case in that Child Link had not committed any illegal act.

¶ 21    On September 27, 2022, over the objections of DCFS, the mother, and the father, the court granted the first motion to intervene in part and allowed Timothy M. intervenor status only for the issue of M.R.'s placement under sections 1-5(2)(b), (c) and (d) of the Act. 705 ILCS 405/1-5(2)(b), (c) and (d) (West 2022). The court continued the motion as to the other requested remedies for a later hearing.

¶ 22    The court held a hearing on permanency, the motion to intervene, the mother's motion to find placement not necessary, and an oral motion of the father seeking the return of M.R. over four court dates: December 13, 2022, and January 12 and 23, and February 14, 2023. The GAL called Casarez, Vega, and the father as witnesses. Timothy M. presented his own testimony and called Robert S. and M.R.'s therapists, Lauren Biggs, and Brittany Dunn, as witnesses. The court excluded Timothy M. from the hearing during the presentation of testimony relating to services

and treatment for the mother and the father. The court also precluded Timothy M. from delving into his claims about ground j and the Whistleblower Act.

¶ 23    Casarez testified that M.R.'s placement in the foster home has been safe and appropriate without signs of abuse, neglect, or corporal punishment. M.R. was up to date on all medical appointments and has been participating in recommended speech, developmental, and occupational therapies at the foster parents' home.

¶ 24    The father was compliant with all recommended services. He completed parent education and coaching, anger management, is engaged in individual therapy, and had not tested positive for illegal drugs. He has been having overnight unsupervised visits with M.R. On ten occasions, Casarez went unannounced to the father's home during visitations and found that the father was properly caring for M.R. The father and M.R. are bonded. The paternal grandmother (grandmother) lives nearby and is available to help care for M.R. Casarez recommended that M.R. be returned to the father as it was in M.R.'s best interest.

¶ 25    On cross-examination by Timothy M., Casarez acknowledged that he once took M.R. to a visit with the mother at a time when the criminal court had prohibited her from having contact with M.R. Casarez had been unaware of the criminal court order prior to that visit. He has never discussed the service plan with the foster parents or attended M.R.'s evaluations or therapies. Casarez agreed that Timothy M. had notified Child Link by email that, at various times, M.R. had returned from visits with the father with a prolonged fever, facial cuts. diaper rash, or the odor of cigarette smoke. Timothy M. also informed Child Link that after overnight visits began, M.R. had developed more behavioral problems.

¶ 26    Vega testified that M.R.'s therapies are being transitioned from the foster parents' home to the father's home. She believed the father will work well with M.R.'s therapists. Vega has found the father's home safe and appropriate.

¶ 27    After a staffing, Child Link concluded that it was in M.R.'s best interest that he be returned to the father. The father has a bond with M.R, improved his parenting skills, and completed the recommended services. The father's visitations with M.R. have been safe and appropriate.

¶ 28    On cross-examination by Timothy M., Vega acknowledged that the foster parents did not receive their portion of the service plan until July 5, 2022, and that Child Link sent the foster parents a payment check with insufficient funds. Vega also acknowledged that despite receiving documentation of the foster parents' issues with M.R.'s overnight visitations, Child Link increased the number of M.R.'s overnight visits with the father.

¶ 29    The father testified to his ability and willingness to care for M.R. He has been responsible for feeding, changing, and bathing M.R. during visitations and was willing to assist with M.R.'s therapies. The father has not used illegal drugs for over two years. He believed that the services have helped him with parenting and family relations.

¶ 30    On cross-examination by Timothy M., the father acknowledged that he had never asked the foster parents if he could participate in M.R.'s therapies or contacted the therapists. He agreed that M.R. had returned to the foster parents after visits with a scab on his back and diaper rash.

¶ 31    Robert S. testified that M.R. came to live with the foster parents in April 2021. Vega told him that M.R. had no place else to go. The foster parents have loved and cared for M.R. in a safe environment, enjoyed activities with him, and have implemented his therapies; they are bonded. Robert S. believed that M.R.'s progress in therapies was "backsliding" because so much therapy time has been devoted to M.R.'s behavioral issues which had been getting worse after overnight

visits. As part of M.R.'s speech therapy, Robert S. has learned sign language and practices it with M.R.

¶ 32    During the past six months, M.R. has returned from visitations with cuts, other wounds, and diaper rash. M.R.'s hair and clothes smelled of cigarette smoke. Robert S. shared his concerns with the staff of Child Link but they did not "seem to care." He believed that Casarez and Vega had been untruthful, had not shared service plan information or permanency goals, and were not interested in whether M.R. was vaccinated or going to medical appointments.

¶ 33    Timothy M. testified that M.R. was evaluated by Early Intervention in June 2021, and was found to not need services. He successfully advocated for a second evaluation as he was concerned that M.R. was behind in developmental milestones. The second assessment finally occurred in June 2022 and included recommendations that M.R. undergo speech and developmental therapies and an audiology exam. Timothy M. set up M.R.'s therapies and audiology exam without assistance from Child Link and practiced sign language with M.R. He saw a decline in M.R.'s progress with therapies when overnight visits began. Child Link did not include the foster parents in case reviews or family team meetings and often ignored his emails and other communications.

¶ 34    Biggs, a developmental therapist and registered behavior technician with Early Intervention, testified that she provided M.R. with developmental therapy for three or four months at the end of 2022. Biggs believed that the foster parents were very involved with M.R.'s therapy. She observed that M.R. had a bond with the foster parents. She had no communications with the mother and the father.

¶ 35    Dunn, a speech language pathologist, provided M.R. with speech therapy at the foster parents' home beginning in August 2022. The foster parents participated in the therapy and tended to M.R.'s needs. Dunn is teaching M.R. sign language, which assists children with language delays

to communicate with less frustration. M.R.'s progress is slow as he has ten verbal words and five to ten signs. A child of age two normally has a vocabulary of greater than 200 words.

¶ 36    After the hearing, the court entered a disposition order on February 14, 2023, finding the mother was unable but the father was fit, able and willing to care for, protect, train, or discipline M.R. and it was not in M.R.'s best interest to become a ward of the court. The court further ordered that M.R. be returned to the care and custody of the father with an order of protection. The order of protection and a supplement to that order required the father to undergo random drug screens, attend family and individual therapy, cooperate with an assessment of M.R.'s special needs, and follow recommendations as to M.R.'s speech, developmental, and occupational therapies, and not permit the mother to have unauthorized contact with M.R. In a separate order, the court granted the father's motion to return home "for good cause shown," and denied the mother's motion to find the foster home unnecessary and inappropriate. In that some order, the court denied Timothy M.'s requests to remove Child Link and to change the goal to substitute care and found his requests to have the father's visits supervised and obtain M.R.'s birth records moot. In a final order, the court vacated its prior order granting Timothy M. leave to intervene for placement only.

¶ 37    Timothy M. filed a motion to reconsider the court's February 14 rulings and asked the court to change the permanency goal to substitute care and remove Child Link from monitoring the case. After a hearing, on May 19, 2023, the circuit court entered an order denying the motion to reconsider and a separate order which again vacated its prior order giving Timothy M. party status as an intervenor. The court excused Timothy M. from the rest of the proceedings on that date.

¶ 38    The court then remarked that it was clear from the evidence at the permanency hearing that M.R. has many needs and questioned Child Link's attention to those needs. The court directed

Child Link to assure that M.R. was receiving consistent and regular therapies. A status date was set for June 6, 2023.

¶ 39      In his appellant's brief, Timothy M., referred to events which took place after the denial of his motion to reconsider. We then directed the State to provide a status report, attaching any relevant orders and pleadings which had been entered or filed after May 19 and explain the status of M.R.'s current placement and monitoring agency. See *J.S.A. v. M.H.*, 224 Ill. 2d 182, 212 (2007) ("The appellate court may take judicial notice that there have been various orders entered during the pendency of the appeal."). The status report and its attachments and a transcript of the June 6 proceedings reveal the following facts.

¶ 40      On June 2, 2023, the GAL filed an emergency motion in which the GAL asserted several grounds for finding the father had violated the protective order and abandoned his parental responsibilities. The father left M.R. with the grandmother at the end of March 2023 and did not visit or care for M. R. for the next three weeks. He cancelled M.R.'s therapy sessions and told Child Link that M.R. no longer needed therapy. Under a care plan, M.R. began living with the aunt on May 16, 2023, after the grandmother indicated that she could no longer care for M.R.

¶ 41      The court heard the motion at the scheduled June 6, 2023, status date. Vega testified and confirmed that M.R. was living with the aunt. After a staffing, the agency decided not to return M.R. to the foster parents because M.R. had no contact with the foster parents since February 14, 2023 but had been having contact with the aunt through her supervision of M.R.'s visits with the mother and O.R. The aunt's home passed a safety check and the aunt, her husband and three adult children who are living in the home were successfully screened as to their backgrounds. The aunt has never been the subject of a DCFS investigation. She has arranged for M.R.'s services and therapies.

¶ 42    After the hearing, the circuit court granted the GAL's emergency motion and found the father had violated the order of protection. The court entered a modified dispositional order finding the father was unable and unwilling to parent M.R. and set a permanency hearing for August 21, 2023. The court also ordered that a new agency be appointed to monitor the case. In its oral remarks, the court raised various concerns about the way the case had been managed by Child Link including its removal of M.R. from the foster parents in August 2022 in apparent retaliation for the motion to intervene, insufficient communications with the foster parents, disregard of Timothy M.'s request for a second assessment of M.R. despite his delay in speech development, and misjudgment as to the father's preparation and ability to care for M.R. The court expressed a hope that the new agency might consider placing M.R. with the foster parents.

¶ 43    On June 12, 2023, Timothy M. filed a notice of appeal from the denial of his motion to reconsider only.

¶ 44    At the August 21 permanency hearing, the court heard testimony from a caseworker from the new agency and received a report from Court Appointed Special Advocates (CASA). The evidence showed that M.R. was thriving with the aunt, had made improvements with speech therapy, was more compliant, and had less tantrums. DCFS requested that the goal be changed to substitute care. The court set a goal of guardianship as requested by the mother and the father. The court set a further permanency hearing on March 5, 2024.

¶ 45    In his appellant's brief, Timothy M. argues that the circuit court's finding that father was fit to care for M.R. was against the manifest weight of the evidence. He also argues that the court erred in returning M.R. to the care and custody of the father and that it was in M.R.'s best interest to change the goal to substitute care. Timothy M. further argues that the court erred in granting him limited intervenor status, barring evidence as to the adulterous conduct of the father and the

mother, and in finding the Whistleblower Act was inapplicable. He asks that we remand with a directive that the circuit court place M.R. with the foster parents or in the alternative, remand the matter for a new permanency hearing where he has "full party" status and is allowed to present evidence relevant to ground j. Finally, he asks that we find that Child Link was not serving the best interest of M.R.

¶ 46    The Act provides a "step by step" process for deciding whether a minor should be removed from his or her parents, made a ward of the court, and whether parental rights should be terminated. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). After a petition for wardship has been filed and a minor has been placed in temporary custody, the circuit court conducts an adjudicatory hearing, where the court must consider whether the minor was abused, neglected, or dependent. *Id.*; 750 ILCS 405/2-21(1), (2) (West 2022). Once the circuit court determines that a minor was abused, neglected, or dependent, the court then conducts a disposition hearing to determine whether it is consistent with the health, safety, and best interests of the minor and the public that [the minor] be made a ward of the court." *Id.* § 2-21(2).

¶ 47    Here, the circuit court found that M.R. was abused or neglected and adjudged him a ward of the court. The court's adjudication order has not been challenged on appeal.

¶ 48    After a minor is made ward of the court, the court next determines the proper disposition best serving the health, safety, and interest of the minor and public. 705 ILCS 405/2-22(1) (West 2022). There are four basic dispositional orders, the minor may be: "(1) continued in the care of the minor's parent, guardian, or legal custodian; (2) restored to the custody of the minor's parent, guardian, or legal custodian; (3) ordered partially or completely emancipated; or (4) placed in accordance with section 2-27 of the Act." *In re M.G.*, 2018 IL App. (3d) 170591, ¶ 10 (citing 705 ILCS 405/2-22(1), 2-23(1)(a) (West 2016); *M.M.*, 2016 IL 119932, ¶ 18). "After disposition, the

court maintains jurisdiction and may modify the dispositional order, consistently with section 2-28 of the Act, at any time until the case is finally closed or the child reaches majority." *In re Desiree O.*, 381 Ill. App. 3d 854, 864 (2008) (citing 705 ILCS 405/2-23(2) (West 2006)).

¶ 49　A circuit court's decision at a dispositional hearing will only be reversed if the findings of fact are against the manifest weight of the evidence or the circuit court committed an abuse of discretion by selecting an inappropriate dispositional order. *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008) (citing *In re Ta. A.*, 384 Ill. App. 3d 303, 307 (2008)). A finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent. *In re A.P.*, 2012 IL 113875, ¶ 17 (citing *In re D.S.*, 217 Ill. 2d 306, 322 (2005)). The circuit court is generally vested with wide discretion because it has the best opportunity to observe the witnesses' testimony, assess credibility, and weigh the evidence. *In re E.S.*, 324 Ill. App. 3d 661, 667 (2001). An abuse of discretion occurs "when no reasonable person would agree with its decision." *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011).

¶ 50　Section 1-5(2) of the Act includes provisions relating to the participation of foster parents in abuse and neglect proceedings. 705 ILCS 405/1-5(2) (West 2022) A foster parent is given the right to be heard in the case pursuant to subsection 1-5(2)(a) but is not considered a party. *Id.* §1-5(2)(a). However, subsections 1-5(2)(b), (c) and (d) allow a foster parent to seek intervention. *Id.* §1-5(2)(b), (c), (d). In relevant part, these statutory provisions provide:

　　"(b) If after an adjudication that a minor is abused or neglected as provided under Section 2-21 of this Act and a motion has been made to restore the minor to any parent, guardian, or legal custodian found by the court to have caused the neglect or to have inflicted the abuse on the minor, a foster parent may file a motion to intervene in the proceeding for the sole purpose of requesting that the minor be placed with the foster parent, provided that the

foster parent (i) is the current foster parent of the minor or (ii) has previously been a foster parent for the minor for one year or more, has a foster care license or is eligible for a license or is not required to have a license, and is not the subject of any findings of abuse or neglect of any child. The juvenile court may only enter orders placing a minor with a specific foster parent under this subsection (2)(b) and nothing in this Section shall be construed to confer any jurisdiction or authority on the juvenile court to issue any other orders requiring the appointed guardian or custodian of a minor to place the minor in a designated foster home or facility. ***.

(c) If a foster parent has had the minor who is the subject of the proceeding under Article II in the foster parent's home for more than one year on or after July 3, 1994 and if the minor's placement is being terminated from that foster parent's home, that foster parent shall have standing and intervenor status except in those circumstances where the Department of Children and Family Services or anyone else authorized under Section 5 of the Abused and Neglected Child Reporting Act has removed the minor from the foster parent because of a reasonable belief that the circumstances or conditions of the minor are such that continuing in the residence or care of the foster parent will jeopardize the child's health or safety or presents an imminent risk of harm to the minor's life.

(d) The court may grant standing to any foster parent if the court finds that it is in the best interest of the child for the foster parent to have standing and intervenor status." *Id.*

¶ 51    We have interpreted subsection 1-5(2)(c) and its use of the word "shall" to mean that a court must allow a foster parent intervention where the statutory requirements are met (*In re R.J.*, 2022 IL App 1st 211542, ¶ 63) and "for the sole purpose of requesting continued placement of the child with that foster parent" (*Desiree O.*, 381 Ill. App. 3d at 865 (citing *In re A.L.*, 294 Ill App 3d

441, 448 (1998)). We conclude that the use of "shall" in subsection 1-5(2)(b) would also require that where applicable the foster parent must be granted intervention. We also conclude that a court has discretion under subsection 1-5(2)(d) to grant intervention as that provision uses "may." A circuit court's decision as to a foster parent's petition to intervene is reviewed for an abuse of discretion. See *In re M.W.*, 221 Ill. App. 3d 550, 552 (1991). To the extent, we must interpret the Act our review is *de novo*. *In re C.C.*, 2011 IL 111795, ¶ 29.

¶ 52    Before reviewing the merits, we have an independent duty to consider our jurisdiction. *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984). Our jurisdiction analysis will begin with a consideration of Timothy M.'s notice of appeal.

¶ 53    The notice of appeal "is the jurisdictional step which initiates appellate review". (Internal quotation marks omitted.) *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). If the notice of appeal is not proper, this court "lacks jurisdiction over the matter and is obligated to dismiss the appeal." *Id.* The notice "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court". Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). "An unspecified judgment is reviewable if it is a 'step in the procedural progression leading to the judgment specified in the notice of appeal.' " *Taylor v. Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 659 (1995) (quoting *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 435 (1979)).

¶ 54    In his notice of appeal, Timothy M. appealed solely from the order which denied his motion to reconsider the court's rulings on February 14, 2023, which included the disposition order, finding the father fit and returning M.R. to the father's care, and the order denying Timothy M.'s requests to change the goal to substitute care and to remove Child Link. The notice of appeal does allow us to consider these orders as steps in the procedural progression to the denial of the motion

to reconsider these orders. See *In re Marriage of King*, 336 Ill. App. 3d 83, 87 (2002). We also find that the notice of appeal allows us to consider Timothy M.'s claims on appeal as to errors in the permanency hearing itself, specifically that he was prevented from presenting evidence relating to the Whistleblower Act and ground j and was barred from portions of the hearing because he was not given full party status.

¶ 55     However, Timothy M. did not appeal from the separate order vacating the order granting him intervenor status which was entered on the same day that the court denied his motion to reconsider. Therefore, we do not have jurisdiction over that order. Additionally, although Timothy M. in his supplemental brief challenges the subsequent decision to place M.R. with the aunt and raises criticisms of the proceeding on June 6, 2023, we do not have appellate jurisdiction over any action taken after the denial of Timothy M.'s motion to reconsider.

¶ 56     Next, as to our jurisdiction, the GAL, the mother, and the father contend that this court lacks jurisdiction to review the denial of Timothy M.'s request to change the permanency goal to substitute care. We do not agree.

¶ 57     Generally, permanency orders are interlocutory, nonfinal orders, not subject to an appeal as of right under Supreme Court Rule 301 (eff. Feb. 1, 1994). *In re Curtis B.*, 203 Ill. 2d 53, 59-60 (2002). Supreme Court Rule 306(a)(5) (eff. Oct. 1, 2020) allows a party to file a petition for leave to appeal from an interlocutory permanency order. The petition must be filed within 14 days from the entry or denial of the order setting the permanency goal (Ill. S. Ct. R. 306(b)(1) (eff. Oct. 1, 2020); the time for filing the petition is not extended by the filing of a motion for reconsideration (*In re Leonard R.*, 351, Ill. App. 3d 172, 174-75 (2004)).

¶ 58     In this case, the court entered a permanency goal of return home within 5 months on April 19, 2022. This was an interlocutory order which was subject to change until the goal was met and

was appealable only under Rule 306(b)(1). On February 14, the court entered a disposition order which returned M.R. to the father and therefore the court had determined the permanency goal had been met. After returning M.R. to the father's care, the court, in a separate order, denied Timothy M.'s request to change the permanency goal to substitute care. The decision to deny the goal change corresponded and was consistent with the disposition order returning M.R. home to the father. On appeal, Timothy M. asks this court to reverse the disposition order and grant his motion for a change of the permanency goal or remand for a new permanency hearing. Under these particular circumstances where the goal of return home was met and the circuit court entered a disposition order, which is appealable under Supreme Court 301 (eff. Feb. 1, 1994), we conclude that we have appellate jurisdiction to consider what relief if any Timothy's M. may be entitled to as to his motion to change the permanency goal in the event we reverse the disposition order. See *In re Faith B.*, 216 Ill 2d 1 (2005).

¶ 59    Finally, we turn to reviewing our jurisdiction under principles of mootness. We asked the parties to file supplemental briefs on the question of whether M.R.'s new placement and the orders of June 6 and August 21, 2023 render the issues raised and the relief requested by Timothy M. moot. Timothy M., the GAL, and the father filed supplemental briefs and the mother adopted the supplemental briefs of the GAL and the father. The State has not filed any briefs in this case.

¶ 60    As a general proposition, Illinois appellate courts will not review moot cases. *American Service Insurance Co. v. City of Chicago*, 404 Ill. App. 3d 769, 781 (2010)."An appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or

moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004). A case should be dismissed when "the issues have ceased to exist" and the appellate court cannot grant any effectual relief. *Hanna v. City of Chicago*, 382 Ill. App. 3d 672, 676 (2008). There are three exceptions to the mootness doctrine: the public interest exception, the capable of repetition yet avoiding review exception; and the collateral consequences exception. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Whether a case is moot is an issue we review *de novo*. *Benz v. Department of Children and Family Services*, 2015 IL App (1st) 130414, ¶ 31.

¶ 61    In the parties' supplemental briefing, the father, the mother, and the GAL agree that Timothy M.'s appeal from the disposition order, which found the father fit and returned M.R. to his care is now moot. Although Timothy M. indicated in his initial brief that his appeal from the disposition order may be moot in light of the June 6 proceedings, he takes a different position in his supplemental and reply briefs and urges this court to review the February 14 disposition order.

¶ 62    However, the relief that Timothy M. seeks on appeal is the reversal of the February 14 disposition order, which found that the father was fit and returned M.R. to his care with an order of protection. That disposition order no longer exists. On June 6, the circuit court found the father had violated the order of protection, vacated the order of protection, and entered a modified disposition order. The modified disposition order found the father unable and unwilling to care for M.R. M.R. was then placed with the aunt and is no longer in the care of the father. Due to these changes in circumstances, we are now unable to grant effectual relief as we cannot reverse the disposition returning M.R. home as it is no longer in effect. See *In re Rayshawn H.*, 2014 IL App (1st) 132178, ¶ 39 (holding that respondent's challenge to the disposition order, finding respondent unable and adjudging the minor a ward of the court under the guardianship of DCFS, was moot where respondent was subsequently found fit, willing, and able and the minor was returned home)

(citing *In re Christopher K.*, 217 Ill. 2d 348, 358-59 (2005)). Further, Timothy M.'s claims that the circuit court erroneously barred him from the permanency hearing during testimony relating to the mother and the father's treatment and services and precluded him from presenting evidence as to their adultery (ground j) are also moot. Timothy M. made these arguments on appeal in support of his request that we reverse the disposition order finding that the father was fit and returning M.R. to the father.

¶ 63 Timothy M. contends review of the disposition order is necessary because the June 6 finding that the father is unfit "vindicates" his arguments at the permanency hearing. This argument actually supports a finding that Timothy M.'s challenge to the circuit court's finding of fitness in the disposition order is now moot. He also argues that M.R.'s placement with the aunt is not in M.R.'s best interest but the placement with the aunt is not before us.

¶ 64 Timothy M.'s supplemental brief does not offer any arguments that an exception to the mootness doctrine applies to his appeal from the disposition order. He therefore has forfeited any argument that his appeal as to the disposition order falls within an exception and we find that his appeal from that order is moot and must be dismissed. See *Department of Central Management Services v. Illinois Labor Relations Board*, 2012 IL App (4th) 110356, ¶ 26.

¶ 65 The GAL has taken the position that the appeal from the denial of Timothy M.'s motion to change the permanency goal to substitute care is *not* moot. The GAL reasons the current goal of guardianship remains open for reexamination and revision and so it is still possible that the goal could be changed to substitute care. We disagree with the GAL.

¶ 66 Even accepting that the guardianship goal is subject to change, what is before us is the denial of Timothy M.'s motion to change the prior permanency goal of return home within 5 months to substitute care. He is asking us to reverse the denial of his motion and change the goal

to substitute care. However, guardianship and not return home is the current goal. The arguments and evidence which are before this court pertaining to Timothy M.'s motion did not concern or address any possible request to change the goal of guardianship to substitute care. The father, based on new evidence, has now been found unable and unwilling to care for M.R. M.R. has been living in a home with the aunt, O.R., and other relatives for over six months. While this appeal has been pending, the circuit court held a permanency hearing, which resulted in the guardianship goal based on evidence related to M.R. and his current living environment and progress. From what we know from the status report filed by the State, the court in choosing the guardianship goal did not follow the GAL's recommendation that the goal be substitute care. We decline to consider the denial of the motion to change the permanency goal from return home to substitute care in that the decision was based on circumstances that no longer exist.

¶ 67    The father argues that the changes in the circumstances prevent us from granting Timothy M.'s request that we remand this matter with directions to the circuit court to place M.R. with the foster parents. We agree with the father.

¶ 68    As discussed, the proceedings below are now in the permanency phase with a permanency hearing scheduled in March 2024. The father maintains that during this stage, the circuit court cannot order a specific placement of M.R. with anyone, including the foster parents. See *In re B.S.*, 2021 IL App (5th) 200039, ¶ 31 ((citing *In re M.V.*, 288 Ill. App. 3d 300, 306 (1997) (section 2-28(2) of the Act precludes the juvenile court from ordering specific placements "after DCFS has been appointed guardian of the minor")). The father further argues that although section 1-5(2)(b) of the Act allows a court to place a minor with a foster parent, the authority to do so is limited. 705 ILCS 405/1-5(2)(b) (West 2022) This section allows a foster parent to file a motion to intervene to seek placement of the minor with the foster parent if there is a motion to return the minor to a

person found to have caused the minor neglect or abuse. *Id.* We cannot direct the circuit court to place M.R. with the foster parents in that the case is in the permanency stage and the requirements of section 1-5(2)(b) (*Id.*) do not now exist. See *In re R.M.*, 288 Ill. App. 3d 811 (1997). There is no pending motion to return M.R. to the mother or the father. Further even if there is a possibility that such a motion could still be made, Timothy M. no longer has intervenor status. As noted, the circuit court vacated the order granting him that status and he has not appealed from that order.

¶ 69 Similarly, we are prevented from remanding with directions that the circuit court grant Timothy M. full intervenor status in that he no longer has intervenor status at all in the circuit court. He may, however, still have recourse in the circuit court by filing a new motion to intervene under any applicable subsection of section 1-5(2) of the Act.

¶ 70 As to Timothy M.'s appeal from the denial of his request to remove Child Link, the GAL, the father, and the mother agree that the appeal is moot because the circuit court has now removed Child Link as the monitoring agency and as a result a new agency has been appointed. We agree that we cannot give Timothy M. effectual relief as the agency has already been removed, rendering this issue moot. And because the appeal from the denial of the motion to remove Child Link is moot, the arguments relating to this issue are moot, including Timothy M.'s contentions on appeal that the court erred in preventing him from presenting evidence and arguments as to Child Link's alleged violations of the Whistleblower Act.

¶ 71 In his supplemental brief, Timothy M. appears to contend that the motion to remove Child Link is not moot because the foster parents may be entitled to back wages and attorney fees under the Whistleblower Act. Mootness would not preclude our consideration of this issue if there was a "live controversy" relating to money damages as there would be the possibility of effectual relief.

*Strauss v. City of Chicago*, 2022 IL 127149, ¶ 53. Timothy M.'s argument fails in that there is no live controversy as to damages under the Whistleblower Act.

¶ 72     Timothy M. did raise the Whistleblower Act at various stages of the case. He first raised it in his response to DCFS's motion to reconsider the September 1, 2022 order where he argued that Child Link in removing M.R. had retaliated against the foster parents for their allegations of misconduct against the agency in violation of the Whistleblower Act. At the hearing on the motion to reconsider, the circuit court found that the Whistleblower Act did not apply. Timothy M. later sought to inject Child Link's alleged violations of the Whistleblower Act into the permanency hearing in support of his motion to remove Child Link. Even assuming Timothy M. could allege a valid Whistleblower action for damages and such a suit could be brought in this matter, there is no Whistleblower action before us, and Timothy M. did not seek to bring one. There is no basis to award damages.

¶ 73     Timothy M. also argues that it would be against public policy to find his motion to remove Child Link moot. He maintains that foster parents will be discouraged from reporting improper conduct of case managers if his motion is not resolved by this court. The argument does not change our conclusion that we are unable to grant the relief requested in Timothy M.'s motion to remove Child Link from the case, as Child Link has been removed and replaced as the monitoring agency.

¶ 74     Timothy M. has not explicitly argued that an exception to the mootness doctrine applies to the denial of his motion to remove Child Link. Timothy M. may be attempting to claim the issue falls within the public interest exception to the mootness doctrine when he argues that the issue should be reviewed for public policy reasons. He must do more than assert public policy. The public interest exception applies where there is a showing that the question involved has a public nature; the circumstances are likely to recur; and an authoritative determination for guidance is

desirable. *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (2009). This exception is construed narrowly and a clear showing of each element is required. *Id.* Timothy M. has failed to make a clear showing of each element and has therefore failed to demonstrate that the public interest exception to the mootness doctrine applies.

¶ 75    For the foregoing reasons, we conclude this appeal is moot and we must dismiss this appeal.

¶ 76    Appeal dismissed.